James A. **WIERCK** and William A. **Wierck, Appellees,**

v.

**GRINNELL MUTUAL REINSURANCE COMPANY, Appellant.**

Toni O. **AGUE** and LeRoy **Ague, Appellees,**

v.

**GRINNELL MUTUAL REINSURANCE COMPANY, Appellant.**

**No. 89–132.**

Supreme Court of Iowa.

May 23, 1990.

Rehearing Denied June 15, 1990.

Theodore T. Duffield and Michael D. Huppert of Patterson, Lorentzen, Duffield, Timmons, Irish, Becker & Ordway, Des Moines, for appellant.

Tom Riley, James E. Bennett and Nestor Lobodiak of Tom Riley Law Firm, P.C., Cedar Rapids, for appellees Toni Ague and LeRoy Ague.

Nick Critelli of Nick Critelli Associates, P.C., Des Moines, for appellees James A. Wierck and William A. Wierck.

Considered by McGIVERIN, C.J., and HARRIS, SCHULTZ, CARTER, and LAVORATO, JJ.

HARRIS, Justice.

A liability insurance company was sued on a claim of bad faith in failing to settle a prior suit brought against a policyholder. The company appeals following a substantial adverse jury verdict.[1] Because we find as a matter of law there was no bad faith, we reverse.

The adverse jury verdict deprives the company of its version of disputed facts, and there were many. *See* Iowa R.App.P. 14(f)(1) (finding of facts in law action, if supported by substantial evidence, binding on appeal). Some important matters, however, were not in serious dispute. The insured was clearly liable to the original plaintiffs in an amount likely to exceed the $100,000 policy limits. The case was not settled within the policy limits. The jury award in the underlying case was much in

---

1. There were actually two suits on the same claim. The policyholders raised the same bad faith claim in a counterclaim to a declaratory judgment action brought by the insurer to test the policy. The parties injured by the insured brought their bad faith action following a successful jury trial against the insureds. For simplicity we deal with the controlling question as raised only in the third-party suit brought by the injured parties.

excess of the policy limits.[2] But it takes much more to show bad faith.

William (Al) Wierck farmed near Fairbank, Iowa. He had a number of vehicles insured through Grinnell Mutual Reinsurance Co. (Grinnell). His son, Jim Wierck, lived near Hiawatha, Iowa, and for a time was part owner and operator of a business there. Until the business was discontinued sometime in 1979 the company carried its own insurance policy on a 1978 three-quarter ton Ford pickup truck. That coverage was provided through Iowa National Mutual Insurance Co. The policy was originally written for the business, but after the business failed it was changed to provide personal coverage for Jim Wierck.

While the business was failing Jim applied with Grinnell for his own insurance on the truck. He negotiated with Fearl Cowlishaw, a Grinnell agent who had long done business with Jim's father. The application was forwarded to Grinnell on November 28, 1979. It was made out to be nonbinding; Cowlishaw knew that Jim had previously been convicted of operating a motor vehicle while intoxicated, a fact reflected in the application to Grinnell. Cowlishaw told Jim at the time there was little likelihood that Grinnell would grant coverage.

After Jim's business failed he had trouble making payments on the truck. After much discussion Jim's father, Al, took over possession and payments on the truck and asked Cowlishaw to add the pickup to his own coverage. The trial court found that Cowlishaw knew the truck was the one previously owned by Jim. Before title was actually passed from Jim to Al, Grinnell rejected Jim's original application. Due to a one-car accident involving the truck, actual transfer of title from Jim to Al did not take place until March 13, 1980.

In the fall of 1980, when Jim again became employed, he and his father agreed that Jim would buy back the truck. Before title was transferred from Al back to Jim, Jim was involved in an accident in which he struck a car driven by Toni Ague (and owned by LeRoy Ague). Toni was seriously injured and there was considerable property damage. It is undisputed that at the time of the accident Jim was intoxicated; later he was again convicted of OMVWI. Soon after the accident Toni Ague retained an attorney, John Riccolo. On his advice she declined to discuss the case with Grinnell investigators. Riccolo declined an invitation to submit a settlement offer because Ague was undergoing medical treatment. Suit was filed May 20, 1981. Grinnell assigned the defense of the case to Robert Tilden, an experienced and highly respected Cedar Rapids trial attorney.

At this point the facts become hotly disputed. Eventually there were two trials, first a bench trial and then the jury trial from which this appeal was taken. Grinnell lost them both so its version of the facts is of limited importance. Nonetheless, for reasons we shall explain, Grinnell's version remains significant.

Tilden soon concluded that there was clear liability on the Agues' claim against the Wiercks and advised Grinnell to settle if possible. It is also clear that, after the subject had been broached by Tilden, Grinnell retained independent counsel who brought a declaratory judgment action against the Wiercks to contest coverage under the policy.

The Wiercks make much of the declaratory judgment action in the present case, citing it as the quintessence of "stubbornly" pursued bad faith. The case was tried to a different judge, who determined the action to be without merit. No appeal was taken so that judgment, and the findings which support it, become binding in this case. Grinnell is roundly chastised and accused of bad faith for even bringing the declaratory judgment action. The adverse result in the declaratory judgment action, however, certainly does not amount to bad faith. The action was brought by and on the advice of another experienced and competent trial lawyer, who was surprised by the adverse outcome. Under the circumstances his surprise is certainly not unrea-

2. Toni Ague, the injured woman, obtained a judgment of $237,208 plus interest. Her husband, LeRoy Ague, obtained a judgment for $7000 plus interest.

sonable. Grinnell knew of the circumstances surrounding coverage of the pickup. James had applied for coverage and been rejected December 31, 1979. A week later the pickup was added to Al's policy. And James was driving the pickup when it was involved in the accident. We agree that it was eminently reasonable for Grinnell to bring the declaratory judgment action, and doing so was no indication of bad faith.

The parties also differed in their version of any settlement negotiations. The jury verdict obliges us to reject Grinnell's version that Tilden's repeated offers to pay policy limits—and more—were frustrated by the Wiercks' attorney's refusal to set an amount at which the case could be settled. It is clear that Tilden was continuously pressed to settle, both by the Agues' attorney as well as the Wiercks' personal attorney. In the Wiercks' view it was incumbent upon Tilden to make an offer of settlement and name a specific amount.

On the other hand the Wiercks cannot show that they or Agues offered to settle for any set amount. They do point out that Riccolo demanded settlement at $300,000 from Ralph Gearhart (Grinnell's attorney in the declaratory judgment action) which Gearhart rejected. The Wiercks think there should have been a counteroffer long before the conclusion of the declaratory judgment action.

For what followed we quote from the appellees' brief:

> Having failed in their declaratory judgment action on May 4, 1984, and faced with the underlying personal injury trial on May 21, 1984, Grinnell Mutual authorized Robert Tilden to make his first settlement offer to the Agues on May 8, 1984. Robert Tilden's first offer entailed the full $100,000 policy limits. Agues declined, citing prejudgment interest and court cost as their concerns.

> On Friday, May 18, 1984, Robert Tilden offered $130,000 including prejudgment interest for three years. Agues again asked for court costs but Robert Tilden refused.

> John Riccolo testified that if Robert Tilden had offered court costs at that time the Agues would have settled. Court costs amounted to less than $200 and included neither the expenses associated with the underlying personal injury action nor the $14,000 spent by the Agues in defending the declaratory judgment action.

> On Saturday, May 19, 1984, Riccolo deposed Mrs. Agues' orthopedic surgeon to get a current medical evaluation for Monday's trial. This deposition cost the plaintiffs another $1000. Before trial on Monday morning, May 21, 1984, Robert Tilden offered the $200 court costs. Dennis Day, Grinnell's senior litigation attorney, testified it was always expected that Mr. Tilden would pay the court costs in any settlement.

> John Riccolo, minutes before trial, counter-offered $150,000 of which the Wiercks would contribute roughly $20,000. William Wierck, however, testified that after spending $50,000 to defend the declaratory judgment action: 'John, I just don't got the money right now: I'd pay if I had it but this—they have wiped me out.'

There is surprisingly little dispute concerning the general principles regarding bad faith in excess coverage cases. Iowa law on the subject has been developed through a handful of oft-cited cases. *Dolan v. Aid Ins. Co.*, 431 N.W.2d 790, 792 (Iowa 1988); *Kooyman v. Farm Bureau Mut. Ins. Co.*, 315 N.W.2d 30, 34–37 (Iowa 1982); *Koppie v. Allied Mut. Ins. Co.*, 210 N.W.2d 844, 846–48 (Iowa 1973); *Kohlstedt v. Farm Bureau Mut. Ins. Co.*, 258 Iowa 337, 339–48, 139 N.W.2d 184, 185–90 (1965); *Ferris v. Employers Mut. Casualty Co.*, 255 Iowa 511, 515–16, 122 N.W.2d 263, 265–66 (1963); and *Henke v. Iowa Home Mut. Casualty Co.*, 250 Iowa 1123, 1131–32, 97 N.W.2d 168, 179 (1959).

These authorities establish the following principles. We begin with the simple assumption that an insured buys an agreed amount of liability protection for a set premium. The insured, in the first instance, is at risk for the amounts in excess of the protection which has been purchased. The policy limits, however, set a

boundary which the insurer cannot misuse to the detriment of the insured. It is bad faith for an insurance company to act irresponsibly in settlement negotiations with respect to the insured's risk in that part of the claim in excess of coverage. It is bad faith for the company to factor in its consideration of settlement offers the limited amount between an offer and the policy limits.

 The best standard for good faith in a specific negotiation is to ignore the policy limits. If, but for the policy limits, the insurer would settle for an offered amount, it is obliged to do so (and pay toward settlement up to the policy limits). But the insurer is free to reject the offer if it would have rejected the same offer under policy limits covering the whole claim.

We chose not to consider Grinnell's offer of policy limits on the eve of trial. We rest our reversal on the fact that another, more fundamental, bad faith element is missing. The thing missing in the case against Grinnell is a sufficient showing of amounts. Both parties insist it was incumbent upon the other to state a specific offer of settlement, and on this issue we are convinced Grinnell is right. The only specific offer was the $300,000 demand previously mentioned. There is nothing in the record to suggest Grinnell would have settled for that amount if the policy had provided coverage to that extent.

It is an extraordinary thing to require an insurer to pay more than the policy limits. A bad faith claim cannot be based on settlements never presented to the liability insurance carrier. It is thus incumbent on the person claiming bad faith to show that a settlement offer was extended to and was in bad faith rejected by the insurer. Bad faith arises when the rejection can be traced to misconduct of the insurer which irresponsibly exposes the insured to unreasonable risk because an offer was rejected only because of policy limits. This is a matter of set amounts, and the burden of showing the amounts is upon the person claiming bad faith.

Here there was no showing that the company refused to pay up to the policy limits as a part of any specific offer of settlements, much less that any refusal stems from bad faith. A directed verdict should have been ordered for Grinnell.

REVERSED.