Donna Rae KELLY, Individually, and as the Administrator of the Estate of Leo J. Kelly, Deceased, and as Parent and Next Friend of Amy Kelly, a Minor, Appellant,

v.

IOWA MUTUAL INSURANCE CO., Appellee.

No. 99–319.

Supreme Court of Iowa.

Nov. 16, 2000.

As Amended on Denial of Rehearing Jan. 22, 2001.

Philip Willson and Michael J. Davenport of Willson & Pechacek, P.L.C., Council Bluffs, for appellant.

Roy M. Irish of Patterson, Lorentzen, Duffield, Timmons, Irish, Becker & Ordway, L.L.P., Des Moines, for appellee.

Fred M. Haskins of Patterson, Lorentzen, Duffield, Timmons, Irish, Becker & Ordway, L.L.P., Des Moines, for amicus curiae Iowa Insurance Institute.

TERNUS, Justice.

This case requires the court to decide whether an insured being defended under a reservation of rights breaches his duty of cooperation by agreeing to a stipulated judgment with the claimant. We hold that if the insurance company has breached the contract by wrongfully rejecting a reasonable settlement offer, the insured may accept the settlement offer over the insurer's objection without breaching policy duties and losing his right to seek coverage. Because the record before the district court was insufficient to allow a resolution of this issue, we reverse the court's summary judgment ruling in favor of the insurer, and remand the case for further proceedings consistent with this opinion.

### I. Background Facts and Proceedings.

On April 18, 1993, Leo Kelly was killed while making repairs to a farm implement owned by Philip McCarthy. The appellee, Iowa Mutual Insurance Company, insured McCarthy at the time under a farm liability policy. The policy specifically excluded coverage for bodily injury sustained by "any employee ... as a result of his or her employment by the 'Insured.'"

The appellant, Donna Rae Kelly, individually and as the administrator of the Estate of Leo Kelly and as parent and next friend of Amy Kelly (hereinafter "the estate"), made a claim against McCarthy for damages arising from Leo Kelly's alleged wrongful death. In turn, McCarthy sought coverage for this claim from Iowa Mutual.

Iowa Mutual believed that Kelly was McCarthy's employee and that his fatal injuries occurred as a result of his employment by McCarthy. Based on this belief and the employee exclusion contained in the policy, Iowa Mutual disputed coverage. Accordingly, on September 29, 1993, Iowa Mutual instituted a declaratory judgment action against McCarthy and the estate, seeking a declaration that the employee exclusion precluded coverage for any claims of the estate against McCarthy.

The estate, in addition to filing an answer, also filed a cross-claim against McCarthy seeking damages for Kelly's wrongful death. At this point, Iowa Mutual provided McCarthy with an attorney to defend him on the wrongful death claim. The insurer also requested, and the court granted, a severance of the wrongful death cross-claim from the coverage action.

The declaratory judgment action proceeded to trial. The sole issue was whether Kelly was McCarthy's employee at the time of the accident. The jury found against Iowa Mutual, but the trial court granted the insurer's motion for judgment notwithstanding the verdict, ruling that Kelly was McCarthy's employee as a matter of law. The trial court's judgment NOV was reversed on appeal. *Iowa Mut. Ins. Co. v. McCarthy*, 572 N.W.2d 537, 545 (Iowa 1997). This court reinstated the jury's verdict and remanded "for the entry of a declaratory judgment that Iowa Mutual's policy provides coverage for the estate's wrongful death claim." *Id.*

During the pendency of the appeal of the declaratory judgment action, McCarthy and the estate entered into settlement negotiations, the nature and extent of which are not clear from the summary judgment record. It does appear, however, that Iowa Mutual was notified of these discussions, but refused to agree to any kind of settlement because, it contended, its insured, McCarthy, had no liability to the estate and the tort claim could be successfully defended.

Despite Iowa Mutual's objection, McCarthy settled the estate's wrongful death claim. Pursuant to the settlement agreement, McCarthy agreed that a judgment could be entered against him for $507,500 and costs. The estate agreed to accept a $7,500 payment from McCarthy, leaving a balance of $500,000 due on the judgment. (Iowa Mutual's limit of liability was $500,000.) The estate promised that it would not make any further claims against McCarthy, that it would refrain from executing upon or otherwise enforcing the remaining judgment against McCarthy, and that the balance of the judgment would not be satisfied by attachment of, nor become a lien upon, any assets of McCarthy. As part of the settlement, McCarthy assigned to the estate any claims he had against Iowa Mutual. The estate agreed that it would seek to satisfy the remaining judgment only from the proceeds of Iowa Mutual's policy. Pursuant to the agreement, the district court entered a judgment in the stipulated amount, and McCarthy paid the estate $7,500 in partial satisfaction of that judgment.

A few months after the coverage action was resolved, the estate filed the present action against Iowa Mutual seeking payment of the remaining $500,000 judgment, plus interest and costs. Iowa Mutual filed a motion for summary judgment alleging that McCarthy's settlement of the wrongful death case over Iowa Mutual's objection constituted a breach of policy conditions and resulted in a forfeiture of coverage.[1] The estate resisted, claiming that Iowa Mutual breached the policy and, consequently, McCarthy was excused from performance of the policy conditions. The district court granted summary judgment to Iowa Mutual and the estate filed this appeal.

1. The policy in question here contained the following provisions:

 c. You and any other "Insured" involved must:
 . . . .
 (4) Cooperate with us in the investigation, settlement, or defense of the claim or "suit";
 . . . .
 d. No "Insured" will, except at his or her own cost, voluntarily make any payment,

assume any obligation, or incur any expense, other than for first aid, without our consent.

The policy also provided that an insured's "rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured." The final relevant policy term was the proviso that no person has any rights under the policy "unless all of its terms have been fully complied with."

## II. *Scope of Review.*

 Our review of a summary judgment ruling is for the correction of errors of law. *See Continental Ins. Co. v. Bones,* 596 N.W.2d 552, 555 (Iowa 1999). Summary judgment is appropriate where the moving party shows there are no genuine issues of material fact and it is entitled to judgment as a matter of law. *See* Iowa R. Civ. P. 237(c). In determining whether the moving party has met this burden, we view the record in the light most favorable to the party opposing the motion for summary judgment. *See Met–Coil Sys. Corp. v. Columbia Cas. Co.,* 524 N.W.2d 650, 654 (Iowa 1994). This court's role on appeal is "to determine whether a genuine issue of material fact exists and whether the law was correctly applied." *Red Giant Oil Co. v. Lawlor,* 528 N.W.2d 524, 528 (Iowa 1995).

## III. *General Legal Principles.*

 We note initially that the estate, as McCarthy's assignee, stands in the shoes of McCarthy, and its recovery under the Iowa Mutual policy is subject to any defense that Iowa Mutual has against its insured. *See id.* at 533; 2 Allan D. Windt, *Insurance Claims & Disputes* § 9.15, at 61–62 (3d ed.1995) [hereinafter "Windt"]. It is also well established under Iowa law that a party seeking to recover under an insurance policy "must prove compliance with its terms." *Am. Guar. & Liab. Ins. Co. v. Chandler Mfg. Co.,* 467 N.W.2d 226, 228 (Iowa 1991). In cases such as the one before us, where a third party seeks to establish coverage, the burden shifts to the insurer to introduce evidence of noncompliance. *See id.* at 229; *Haynes v. Dairyland Mut. Ins. Co.,* 199 N.W.2d 83, 86 (Iowa 1972). If it is established that the insured has not substantially complied with the policy conditions, the party claiming coverage bears the burden to prove that performance was excused or waived or that the failure to comply was not prejudicial to the insurer. *See Simpson v. U.S. Fid. & Guar. Co.,* 562 N.W.2d 627, 631 (Iowa 1997). Where excuse or waiver is not proved, there is a rebuttable presumption of prejudice. *Id.* at 631–32.

The estate does not argue that McCarthy complied with the policy conditions, but it does assert that various actions of Iowa Mutual released McCarthy from his obligations under the policy. Specifically, the estate complains of Iowa Mutual's defense of McCarthy under a reservation of rights, its commencement of a declaratory judgment action to litigate coverage, and Iowa Mutual's refusal to approve the settlement between McCarthy and the estate.

 "It is a basic principle of contract law that once one party to a contract breaches the agreement, the other party is no longer obligated to continue performing his or her own contractual obligations." 1 Windt § 3.10, at 139; *accord Van Oort Constr. Co. v. Nuckoll's Concrete Serv., Inc.,* 599 N.W.2d 684, 692 (Iowa 1999) (holding that the breach must be material) (citing Restatement (Second) of Contracts § 237, at 215 (1981)). Our *Red Giant* case presents an example of this principle in operation. In *Red Giant,* we held that, where an insurance company refuses to defend the insured against a claim covered by the policy, the insured is free to settle with the injured party by stipulating to the entry of a judgment that is collectible only from the insurer. 528 N.W.2d at 531. The right of the insured in *Red Giant* to settle the claim against it resulted from the insurance company's refusal to defend. Under such circumstances, the "insurer's unjustified refusal to defend relieves the insured from his or her contract obligations not to settle and the insured is at liberty to make a reasonable settlement or compromise without losing his or her right to recover on the policy." 14 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3d* § 202:7, at 202–32 (1999) [hereinafter *"Couch"*]; *accord Fullerton v. U.S. Cas. Co.,* 184 Iowa 219, 231–32, 167 N.W. 700, 705 (1918) ("[The insurer] repudiated its obligation to assume and carry the defense to final judgment; and, having abandoned

the case, it left the assured at liberty to take up the defense and contest the claim to final judgment, or, if so advised, to make the most favorable settlement possible.").

Unlike the insurer in *Red Giant,* Iowa Mutual did not breach its duty to provide a defense. The undisputed facts show that Iowa Mutual employed an attorney to defend McCarthy against the wrongful death claim asserted by the estate. Therefore, we must look at the other circumstances revealed by the record to determine whether there potentially was a breach of the insurance contract by Iowa Mutual. As noted above, the estate contends that Iowa Mutual breached the contract in three ways: (1) by defending McCarthy under a reservation of rights; (2) by commencing a declaratory judgment action; and (3) by refusing to consent to the proposed settlement. We address each contention separately.

IV. *Defense Under a Reservation of Rights.*

 The estate appears to argue that Iowa Mutual's defense of McCarthy pursuant to a reservation of rights violated the contract. An insurer does not breach the policy simply because the defense it provides is under a reservation of rights. *See* 14 Couch § 202:38, at 202–95 to 202–96; *accord Cay Divers, Inc. v. Raven,* 812 F.2d 866, 870–71 (3d Cir.1987); *Gates Formed Fibre Prods., Inc. v. Imperial Cas. & Indem. Co.,* 702 F.Supp. 343, 346 (D.Me.1988); *United Servs. Auto. Ass'n v. Morris,* 154 Ariz. 113, 741 P.2d 246, 252 (1987); *Miller v. Shugart,* 316 N.W.2d 729,

733 (Minn.1982). Nevertheless, some courts have held that an insured may settle without the insurer's consent where the insurer provides a defense to the insured but reserves its right to deny liability for any ultimate judgment. *See, e.g., Cay Divers,* 812 F.2d at 870; *Ins. Co. of N. Am. v. Spangler,* 881 F.Supp. 539, 545 (D.Wyo.1995); *Morris,* 741 P.2d at 252. *But see* 1 Windt § 3.09, at 138 ("An insured should not be allowed to enter into an unauthorized settlement simply because it is being defended pursuant to a reservation of rights."). We think the reasoning of these cases is flawed because they permit an insured to breach his duties under the policy without losing coverage, even though there has not been a breach of the contract by the insurance company. *See* 1 Windt § 3.09, at 138–39 (criticizing the *Cay Divers* and *Morris* cases). Therefore, we decline to follow them. This conclusion requires us to consider whether Iowa Mutual breached the policy in any of the other ways claimed by the estate.

V. *Iowa Mutual's Commencement of a Declaratory Judgment Action.*

 The estate appears to acknowledge in its brief that under ordinary circumstances an insurance company that questions coverage may initiate a declaratory judgment action.[2] According to the estate, however, Iowa Mutual's declaratory judgment action does not fall within this general rule because the employment issue that was determinative of coverage was also an issue that would necessarily be determined in the tort suit.[3] The estate asks us to rule that the commencement of

---

**2.** If we have misinterpreted the estate's position and the estate is actually asserting that the mere commencement of a declaratory judgment action constitutes a breach of the policy, we reject that argument. *See Miller,* 316 N.W.2d at 733 (holding that insurer did not repudiate contract by seeking a determination of coverage); *see also McAndrews v. Farm Bureau Mut. Ins. Co.,* 349 N.W.2d 117, 119 (Iowa 1984) (noting insurer that believes it has no coverage may commence a declaratory judgment action).

**3.** The record before the district court did not contain any pleadings or other documents that showed what issues were raised in the tort suit. Therefore, we do not know whether the estate would be able to prove that Kelly's status as an employee, which was determinative of the coverage dispute, was also a material issue in the tort suit. Nevertheless, we assume for purposes of our discussion that such is the case.

a declaratory judgment action under these circumstances was wrongful and constituted a breach of contract.

The majority of courts hold that "a declaratory judgment should not be entered if it depends on the resolution of factual disputes that are at issue in the underlying action." 2 Windt § 8.04, at 8. *Compare Constitution Assocs. v. N.H. Ins. Co.*, 930 P.2d 556, 562 (Colo.1996) (stating that declaratory judgment action must "concern issues that are independent of and separable from those in the underlying case"); *Md. Cas. Co. v. Peppers*, 64 Ill.2d 187, 355 N.E.2d 24, 30 (1976) (holding that declaratory judgment action was premature due to overlapping issues in that action and in tort suit); *U.S. Fid. & Guar. Co. v. Continental Ins. Co.*, 216 Kan. 5, 531 P.2d 9, 15 (1975) (holding that declaratory judgment action was not appropriate where it sought resolution of a fact question that was also a principal issue in a previously filed tort suit); *Roussos v. Allstate Ins. Co.*, 104 Md.App. 80, 655 A.2d 40, 42 (Ct.Spec.App. 1995) (same), *with Reisen v. Aetna Life & Cas. Co.*, 225 Va. 327, 302 S.E.2d 529, 532 (1983) (holding that an action for declaratory judgment filed prior to resolution of tort case presented justiciable controversy, even though the determinative coverage issue would also be decided in tort case). Under this rule, the insurance company must await the resolution of the tort suit before litigating coverage. *See State Farm Fire & Cas. Co. v. Shelton*, 176 Ill.App.3d 858, 126 Ill.Dec. 286, 531 N.E.2d 913, 916, 920 (1988) (noting that insurer could present its coverage defense in proceedings following the tort suit). Even if we were to adopt this rule in Iowa, it is of no assistance to the estate.

If the timing of Iowa Mutual's declaratory judgment action was wrong, then the remedy was to stay or dismiss the cover-age suit. We know of no legal rationale for holding that the premature commencement of a declaratory judgment suit instantly releases the insured from his policy duties, and the estate has cited no cases that so hold. If McCarthy did not want to litigate coverage before his tort liability was determined on the basis that the issues in the coverage case and the tort suit were the same, he should have raised this issue in the coverage action. It is too late to complain of Iowa Mutual's conduct in filing the declaratory judgment action now, in a suit to collect a judgment entered on the tort claim. Therefore, we reject the estate's argument that Iowa Mutual's initiation of a declaratory judgment action to determine issues that were to be resolved in the tort suit constituted a breach of the insurance contract and released the insured from his obligation to comply with the policy conditions.

### VI. *Iowa Mutual's Refusal to Consent to the Proposed Settlement.*

 When an insurer defends an insured, it has control over the defense and over settlement. *See Kooyman v. Farm Bureau Mut. Ins. Co.*, 315 N.W.2d 30, 32 (Iowa 1982). We have recognized that in this situation a covenant of good faith and fair dealing is implied. *See id.* at 33. "This covenant includes a duty to settle claims without litigation in appropriate cases."[4] *Id.; accord* 1 Windt § 5.01, at 295 ("One of an insurer's obligations under a contract of liability insurance, arising out of its implied duty of good faith and fair dealing, is to settle a claim that has been brought against the insured when it is appropriate to do so.").

 Our court has considered several cases in which it was alleged that the insurance company breached its duty of

---

**4.** The duty to settle third-party claims against an insured should be distinguished from the duty to pay first-party claims. This court has refused to "recognize a cause of action for [an insurer's] negligent failure to pay" its own insured's claim. *Hollingsworth v. Schminkey,* 553 N.W.2d 591, 596 (Iowa 1996). Our decision today in the context of third-party claims does not affect the standards governing an insurer's liability for failure to pay a first-party claim.

good faith by failing to settle a claim within policy limits. *See Dolan v. Aid Ins. Co.*, 431 N.W.2d 790, 792 (Iowa 1988); *Kooyman*, 315 N.W.2d at 33–34; *Koppie v. Allied Mut. Ins. Co.*, 210 N.W.2d 844, 846 (Iowa 1973); *Henke v. Iowa Home Mut. Cas. Co.*, 250 Iowa 1123, 1127, 97 N.W.2d 168, 171 (1959). We have summarized the legal principles developed in these cases as follows:

> We begin with the simple assumption that an insured buys an agreed amount of liability protection for a set premium. The insured, in the first instance, is at risk for the amounts in excess of the protection which has been purchased. The policy limits, however, set a boundary which the insurer cannot misuse to the detriment of the insured. It is bad faith for an insurance company to act irresponsibly in settlement negotiations with respect to the insured's risk in that part of the claim in excess of coverage. It is bad faith for the company to factor in its consideration of settlement offers the limited amount between an offer and the policy limits.
>
> The best standard for good faith in a specific negotiation is to ignore the policy limits. If, but for the policy limits, the insurer would settle for an offered amount, it is obliged to do so (and pay toward settlement up to the policy limits). But the insurer is free to reject the offer if it would have rejected the same offer under policy limits covering the whole claim.

*Wierck v. Grinnell Mut. Reins. Co.*, 456 N.W.2d 191, 194–95 (Iowa 1990). Thus, the test in Iowa for excess liability has been clearly established as one of bad faith, not negligence. *See Ferris v. Employers Mut. Cas. Co.*, 255 Iowa 511, 516, 122 N.W.2d 263, 266 (1963).

We have not had an occasion to consider the insurer's duty to settle under circumstances such as those before us, where the insurer has reserved its right to deny coverage for any judgment entered against the insured. Certainly under these circumstances, where the insured may ultimately be responsible for a judgment if coverage is found not to exist, it is extremely important that the insurance company, who is controlling the defense, fulfill its contractual obligation to settle where appropriate. One commentator has observed that an insurer may breach the contract by failing to settle an appropriate case, even though its failure to settle is attributable solely to the company's negligence. *See* 1 Windt § 5.14, at 329. This commentator suggests that,

> recognizing that the company has, despite the absence of bad faith, breached the insurance contract, the company should be precluded from enforcing the provisions in the policy inuring to its benefit, such as the one prohibiting unauthorized settlements by the insured.

*Id.*

We agree. An insurance company cannot use its erroneous belief that it has no coverage to justify a refusal to settle. *See* 1 Windt § 5.05, at 310 & n. 56, at 310–11 (citing cases).[5] At the point in time that the insurer is faced with a fair and reasonable settlement demand that a reasonable and prudent insurer would pay, the insurer must either abandon its coverage defense and pay the demand or lose its right to control the conditions of settlement.[6] If the insurer prefers to debate

**5.** We do not mean to imply that an insurer who refuses to settle a case based on a coverage dispute acts in bad faith. *See Cay Divers*, 812 F.2d at 871 (holding that carrier's "refusal to consent to settlement in the face of a genuine concern over coverage does not constitute bad faith"); *Associated Wholesale Grocers, Inc. v. Americold Corp.*, 261 Kan. 806, 934 P.2d 65, 90 (1997) (holding that an insurer is not subject to excess liability where it refuses to settle a claim based on a good faith question as to coverage). That issue is not presented in this case because the estate does not seek a recovery in excess of Iowa Mutual's policy limits.

**6.** We assume, of course, that the demand is within policy limits. As we have previously held, the insurer has no obligation to pay any

coverage and, accordingly, refuses to pay the settlement demand, the insured is free to either pay the settlement demand or stipulate to the entry of judgment in the amount of the demand. The insurer, if found to have coverage, will be liable for the insured's settlement if the settlement is found to be fair and reasonable.

Although our holding bears some similarity to the legal principles set forth in *Wierck* with respect to an insurer's liability for an excess judgment, we do not impose a bad faith standard for failure to settle a case where the defense is provided under a reservation of rights. The bad faith standard is simply not appropriate here, where the issue is one of *contractual* liability as opposed to *extra-contractual* liability. We hold, therefore, that when an insurer provides a defense under a reservation of rights and rejects a fair and reasonable settlement demand that a reasonable and prudent insurer would pay, the insured is free to consummate the settlement on terms that protect the insured from any personal exposure.[7]

■ Applying these principles to the case before us, we think that summary judgment was premature. The record before the district court showed that settlement negotiations occurred, but the exact course of these negotiations and Iowa Mutual's involvement in them were not made clear. Therefore, we think Iowa Mutual

has failed to demonstrate the absence of a genuine issue of material fact that would permit summary judgment. We recognize that the parties and the court did not have the benefit of any Iowa decision setting forth the applicable law under the circumstances of this case. Therefore, we do not mean to imply by our reversal of the summary judgment that the parties, on remand, will not be able to file properly supported motions for summary judgment that demonstrate one or the other party is entitled to judgment as a matter of law based on the legal principles set forth in this opinion. We merely hold that the information needed to test the insurer's conduct under the law we announce today is lacking in the record before us. Consequently, we reverse the district court's summary judgment ruling in favor of Iowa Mutual and remand for further proceedings.

**REVERSED AND REMANDED.**

McGIVERIN, S.J.,* participates in place of NEUMAN, J., who takes no part.

amount in excess of its limits. *See Wierck,* 456 N.W.2d at 194.

**7.** This holding does not affect the continued validity of our bad faith standard in cases of the insurer's liability for a judgment in excess of its policy limits. Nor should our decision be interpreted to impose a general duty to

settle when coverage is not disputed and the adequacy of coverage is not a concern. *See* 1 Windt § 5.01, at 298 (noting that there should not be a duty to settle where the insurer is "gambl[ing] with its own money").

* Senior judge assigned by order pursuant to Iowa Code section 602.9206 (1999).