# IN THE COURT OF APPEALS OF IOWA

No. 13-0930
Filed October 1, 2014

RICHARD A. PRIMMER, PAMELA
PRIMMER and PRIMMER
TRANSPORTATION, INC.,
      Plaintiffs-Appellants,

vs.

JOHN LANGER, LANCE LILLIBRIDGE
and LILLIBRIDGE TRANSPORTATION, INC.,
      Defendants-Appellees.

_____

Appeal from the Iowa District Court for Benton County, Marsha A. Bergan (summary judgment) and Ian Thornhill (attorney fees and costs), Judges.

Plaintiff appeals the district court's ruling granting summary judgment to the defendants. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Peter C. Riley of Tom Riley Law Firm, P.L.C., Cedar Rapids, for appellants.

Kevin J. Visser, Paul D. Gamez, and Abbe M. Stensland of Simmons Perrine Moyer Bergman P.L.C., Cedar Rapids, and Jason J. O'Rourke of Lane & Waterman, L.L.P., Davenport, for appellees.

Considered by Danilson, C.J., and Potterfield and McDonald, JJ.

**DANILSON, C.J.**

Richard and Pamela Primmer, as well as Primmer Transportation, Inc. (collectively referred to as Primmer) appeal the district court's rulings granting summary judgment on all counts to defendants, John Langer, Lance Lillibridge, and Lillibridge Transportation, Inc. (LTI).[1]  Primmer's petition alleged various counts, and they appeal the summary judgment of each: violation of a noncompetition agreement, misappropriation of trade secrets, conversion or destruction of property, interference with contract, acting in concert, and defamation.  Primmer contends, contrary to the district court's ruling, that they can recover punitive damages against the defendants because the defendants' conduct from which their claims arose constituted willful and wanton disregard for Primmer's rights.  Primmer also maintains the district court erred in awarding the defendants trial attorney fees and assessing costs against Primmer, pursuant to Iowa Code section 500.6 (2011).  Primmer asks that we reverse the rulings of the district court and remand for further proceedings.  The defendants ask that we award them appellate attorney fees, pursuant to Iowa Code section 500.6.  Upon review, we decline to award the defendants appellate attorney fees, and we affirm in part, reverse in part, and remand.

**I. Background Facts and Proceedings.**

Primmer Transportation, Inc, and LTI were both Iowa corporations that specialized in brokering loads for common carriers.  Brokerage customers are

---

[1] The defendants filed two motions for summary judgment.  The first motion related to all counts except the defamation count that was the subject of the second motion.  For purposes of this appeal we will jointly consider both motions but will consider the evidence submitted separately for each motion.

generally companies seeking to have loads shipped on common carriers seeking loads to haul. Brokerages utilize specific lanes of traffic—each lane of traffic having an assigned rate—when conducting business.

Primmer hired Langer as a broker in August 2008. In March of 2009, Langer was given an employee handbook that he signed after reviewing. Among other things, the handbook contained both a noncompetition provision and a nondisclosure provision. In relevant part, they provided:

> **Agreement Not To Compete With The Company.**
> In consideration of my employment rights under this Agreement and in recognition of the fact that I will have access to the confidential information of the Company and that the Company's relationship with their customers and potential customers constitute a substantial part of their good will, I agree that for 90 days from and after termination of employment, for any reason, unless acting with the Company's express prior written consent, I shall not, directly or indirectly, in any capacity, solicit or accept business from, provide consulting services of any kind to, or perform any of the services offered by the Company for, any of the Company's customers or prospects with whom I had business dealings in the year next preceding the termination of my employment.
>
> **Unauthorized Disclosure Of Confidential Information.**
> While employed by the Company and thereafter, I shall not, directly or indirectly, disclose to anyone outside the Company any Confidential Information or use any confidential information (as hereinafter define) other than pursuant to my employment by and for the benefit of the Company.
> The term "Confidential Information" as used throughout this Agreement means any and all trade secrets and any and all data or information not generally known outside of the Company whether prepared or developed by or for the Company or received by the Company from any outside source. Without limiting the scope of this definition, Confidential Information includes any customer files, customer lists, any business, marketing financial or sales record, data, plan or survey; and any other record or information relating to the present or future business, product or service of the Company. All the Confidential Information and copies thereof are the sole property of the Company.

Notwithstanding the foregoing, the term Confidential Information shall not apply to information that the Company has voluntarily disclosed to the public without restriction, or which has otherwise lawfully entered the public domain.

Primmer hired Langer's wife Laura as a part-time broker in June 2009. Primmer terminated her from the position in October 2009, due to declining sales. After Laura was terminated from her position at Primmer, she began contacting LTI regarding possible job openings for herself and Langer.

In November 2009, Richard learned Langer had sent sales records, customer files, and a list of prospective customers to his personal email. Richard confronted Langer who stated he intended to maintain a back-up list of his customers in case anything happened to his work computer. Richard reminded him the information was the property of the company and told him to delete the information from his personal computer. Richard never confirmed that Langer deleted the information.

Sometime after Laura's termination but prior to Langer accepting a position with LTI, Langer bragged to others that he directed one of Primmer Transportation, Inc.'s customers to file a claim against them because "that's the only way you will get paid." He also made statements to other individuals and entities that "Primmer doesn't pay their bills."

After meeting with Lillibridge and receiving a job offer with LTI, Langer advised Richard on January 8, 2010, that he was leaving his employment with Primmer Transportation, Inc. and accepting the offer to work at LTI. Three employees of Primmer Transportation, Inc. submitted affidavits that they witnessed Langer shredding various documents and removing boxes of other

documents from the office on January 8. Specifically, Primmer Transportation, Inc. employees alleged Langer took rates and contract information and shredded information regarding customer contracts, customer load history, quoted lanes, and future lanes. Primmer employees also alleged that Langer deleted archived business information from his work computer, such as customer contacts, potential customer contacts, lane bids, load history, and future business.

Langer sent Richard an email on January 11, 2010 officially resigning his position with Primmer Transportation, Inc. He began working for LTI the same day. LTI employee Reggie Dunn submitted an affidavit that stated he talked with Langer on his first day of employment with LTI.[2] At that time, Dunn observed Langer bring in printouts of information from Primmer Transportation, Inc. including rates, names, and phone numbers. Langer admitted to Dunn that he was worried about the noncompete clause with Primmer Transportation, Inc. As the week went on, Langer started booking freight. Dunn again asked him about the noncompete clause, and Langer stated he was using the names of others when making the sales so they could not be traced back to him.

Following Langer's departure, Primmer Transportation, Inc.'s sales dropped drastically, and they were forced out of business. Primmer contends it was the mismanagement of the defendants that caused the loss in sales. Primmer commenced action against the defendants on May 26, 2010, asserting violation of a noncompetition agreement, misappropriation of trade secrets,

---

[2] Dunn's affidavit was submitted in reference to both motions for summary judgment— exhibit numbers 17 and 9.

conversion or destruction of property, intentional interference with an existing contract, acting in concert, and defamation, and requesting an award of punitive damages.

The defendants filed a motion seeking summary judgment for each of the claims on July 21, 2011. The district court granted summary judgment on all claims except the defamation claim on February 14, 2012. On May 23, 2012, LTI and Lillibridge jointly filed a second motion for summary judgment on the defamation claim, but separate from Langer. The district court granted summary judgment on the defamation claim against LTI and Lillibridge on July 17, 2012. Primmer ultimately agreed to dismiss the defamation claim against Langer with prejudice.

On July 30, 2012, the defendants filed a motion for attorney fees and costs pursuant to Iowa Code section 550.6. The district court granted the motion on February 15, 2013, awarding the defendants $56,559.50 in attorney fees and $1642.15 in expenses.

Primmer appeals both district court rulings granting the defendants' motion for summary judgment as well as the award of attorney fees and costs. The defendants request appellate attorney fees pursuant to section 550.6.

**II. Standard of Review.**

We review summary judgment rulings for correction of errors at law. *Crippen v. Cedar Rapids,* 618 N.W.2d 562, 565 (Iowa 2000). Summary judgment is proper only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). A question of fact exists "if reasonable minds can differ on how the issue should be resolved." *Walker v. Gribble,* 689 N.W.2d 104, 108 (Iowa 2004). In reviewing the district court's ruling, the evidence presented must be viewed in the "light most favorable to the party opposing the motion for summary judgment." *Kelly v. Iowa Mut. Ins. Co.,* 620 N.W.2d 637, 641 (Iowa 2000); *Gen. Car & Truck Leasing Sys., Inc. v. Lane & Waterman,* 557 N.W.2d 274, 276 (Iowa 1996). However, the opposing party "may not rest upon the mere allegations of his pleading but must set forth specific facts showing the existence of a genuine issue for trial." *Hlubek v. Pelecky,* 701 N.W.2d 93, 95 (Iowa 2005); *see also* Iowa R. Civ. P. 1.981(5). Speculation is insufficient to create a genuine issue of material fact. *Hlubek,* 701 N.W.2d at 96.

We review the district court's award of attorney fees for an abuse of discretion. *Olson v. Nieman's Ltd.*, 579 N.W.2d 299, 316 (Iowa 1998).

**III. Discussion.**

The district court granted the two motions for summary judgment regarding all of Primmer's claims, except the defamation cause of action against Langer, which was dismissed by the plaintiffs.

**A. Breach of Non-competition Agreement.**

Primmer maintains Langer violated the noncompetition agreement and this violation caused various customers to decrease and/or cease their business with Primmer. In a breach-of-contract claim, the complaining party must prove: (1) the existence of a contract; (2) the terms and conditions of the contract; (3) that it has performed all the terms and conditions required under the

contract; (4) the defendant's breach of the contract in some particular way; and (5) the plaintiff has suffered damages as a result of the breach. *Molo Oil Co. v. River City Ford Truck Sales, Inc.,* 578 N.W.2d 222, 224 (Iowa 1998).

Langer does not dispute the existence of the contract. Nor does he dispute Primmer's characterization of the terms and conditions—that Langer could leave Primmer and, while continuing to work in the industry, could contact any customers his new employer was already in business with, but during the first ninety days, he could not solicit or *accept* business from anyone who had been uniquely Primmer's customers. We do not interpret the noncompete clause so narrowly. It may be better described as a noncompete and nonsolicitation clause. We observe the agreement not to compete prevented Langer from soliciting or accepting business from Primmer's customers who "had business dealings in the year next preceding the termination of [his] employment." The evidence for the motion for summary judgment is undisputed that during Langer's first ninety days, LTI accepted the business of three of Primmer's customers[3] who had not previously been a customer of Lillibridge.[4]

For purposes of the motion for summary judgment, Langer only disputes the fifth requirement, that Primmer has suffered damages as a result of the breach. Primmer maintains it lost customers' business due to Langer's violation of the agreement. In contrast, the defendants' affidavits maintain two of the

---

[3] Specifically Premier Air Cargo, Inc., Technical Transportation, Inc., and Total Transportation Concept.

[4] The defendants minimize the breach, arguing that while Primmer maintained they suffered reduced or complete loss of business from 140 customers after Langer left their employment, only three companies switched their business within the ninety-day period proscribed by the noncompetition agreement.

customers had stopped using Primmer's service before Langer left due to fear of nonpayment and the third customer stopped using Primmer's service after Langer left, but due to poor service. Langer argues the three customers would have not used Primmer's service regardless of LTI accepting their business, so the breach was not the cause of Primmer's damages although no customer affidavits were submitted by the defendants.

The district court determined there was no issue of material fact on the question of whether Langer's actions or alleged violations of the agreement caused the damages asserted by Primmer. Ruling in favor of Langer, the district stated, in part:

> Even viewing the facts in the light most favorable to Plaintiffs, the Court concludes there is no genuine issue of material fact on the question of whether there is a causal link between Defendants' alleged action and PTI's alleged harm. There is no causal link between Defendants' alleged action and PTI's alleged harm. This is the type of exceptional case in which causation can be decided as a matter of law, because there is no evidence in the record of a causal link between the actions of Defendants and the losses claimed by PTT. First, Plaintiffs have not set forth a specific evidentiary fact showing the existence of a genuine issue of material fact on the question of whether any of PTI's customers left PTI because of Mr. Langer or ever did business with LTI because of Mr. Langer
>
> . . . .
>
> Even when this testimony and Plaintiffs' exhibits supporting their Resistance are viewed in the light most favorable to Plaintiffs, the Court concludes Plaintiffs are unable to identify with any specificity a customer that was lost due to Defendants' actions. With respect to Tom Dawson and GENCO, Defendants have asserted neither customer did business with LTI during the 90-day period covered by the non-solicitation agreement and Plaintiffs have not created a genuine issue of material fact on this assertion. Further, with respect to customers identified during discovery by Plaintiffs, Defendants have asserted that Premier Air Cargo, Inc. and Technical Transportation, Inc. departed their business relationship with PTI due to poor service, prior to Mr. Langer leaving his employment, and Total Transportation Concept

contacted LTI. Defendants have argued that none of these customers stopped doing business with PTI because of any action of Defendants, and Plaintiff has not generated a specific evidentiary fact showing a genuine issue of material fact on this matter. Therefore, because Plaintiffs have failed to show a causal link between Defendants' alleged action and Plaintiffs' claimed harm, Plaintiffs' claims against Defendants that are the subject of the pending summary judgment motion fail.

In respect to damages, our supreme court has stated:

> We have recognized a distinction between proof of the fact that damages have been sustained and proof of the amount of those damages. If it is speculative and uncertain whether damages have been sustained, recovery is denied. If uncertainty lies only in the amount of damages, recovery may be had if there is a reasonable basis in the evidence from which the amount can be inferred or approximated.

*Pringle Tax Serv., Inc. v. Knoblauch*, 282 N.W.2d 151, 153 (Iowa 1979) (internal citation omitted). Richard Primmer's deposition provides in part that the business was experiencing growth on the "brokerage side" until Langer left and ultimately, the business had to be closed because of Langer's actions. But the issue is not whether Langer's actions caused Primmer to close its doors. Rather, the question is whether there is a genuine issue of material fact whether Langer's alleged violations caused some damages contrary to the noncompete provision. The actual amount of damages can be uncertain.

"Generally, questions of proximate cause are for the jury; it is only in exceptional cases that they may be decided as matters of law." *Woods v. Schmitt*, 439 N.W.2d 855, 864 (Iowa 1989). "Even when facts are not in dispute or contradicted, a jury question is presented if reasonable minds might draw different inferences from them." *McCaull v. Universal Mfg. Co.*, 218 N.W.2d 592, 594 (Iowa 1974). Where one party asserts the violation of the contract was

the proximate cause of the damages and the other party offers another explanation, the question is one for the jury. We are unable to weigh the conflicting testimony and make credibility findings to resolve the conflict where summary judgment is sought. *See Taft v. Iowa Dist. Ct. ex rel. Linn Cnty.*, 829 N.W.2d 309, 315 (Iowa 2013) ("[I]nferences raised from admissible evidence tending to prove or disprove a fact are not weighed against each other at the summary judgment stage, but instead are weighed against the abstract standard of reasonableness, casting aside those which do not meet the test and concentrating on those that do." (Internal quotation marks omitted.)). Significantly, no party presented any deposition or affidavit from the three customers that started business with LTI after Langer began his employment with LTI. Thus, we are only left with the competing allegations of each party regarding why the three customers left Primmer and if Primmer suffered any damages.

Moreover, the agreement not to compete required Langer not do any business with customers of Primmer's in the past year for a period of ninety days, regardless of whether those customers also did business with his new employer. This requirement would not prevent LTI from doing business with those customers but would prevent Langer being involved in accepting or soliciting the business. Dunn's affidavit provides a genuine issue of material fact concerning Langer's contact and solicitation with such customers. As noted, Lance Lillibridge's affidavit acknowledged obtaining business from three customers who were former customers of Primmer and who became customers of LTI during that ninety-day period. Dunn testified that in Langer's first week of

employment with LTI, he observed Langer in possession of Primmer's customer list and other information. In Dunn's opinion, Langer was doing a lot of business with Primmer's customers. Langer also acknowledged to Dunn that he was using names of others in the office to avoid being in violation of the noncompete clause. Even if Langer's actions did not cause the failing of Primmer's business, these facts, viewed in a light most favorable to Primmer, support a genuine issue of material fact whether Langer's actions were in violation of the agreement and caused some damages to Primmer. We find summary judgment is not proper on this issue.

### B. Misappropriation of Trade Secrets.

Primmer maintains Langer misappropriated trade secrets in the form of business information concerning lanes of traffic, rates, and contact information of customers. There are three recognized prerequisites for relief based on the appropriation of a trade secret: (1) existence of a trade secret, (2) acquisition of the secret as a result of a confidential relationship, and (3) unauthorized use of the secret. *Lemmon v. Hendrickson*, 559 N.W.2d 278, 279 (Iowa 1997). The plaintiff has the burden to establish each of these elements by a preponderance of the evidence. *Id.* In granting the defendant's motion for summary judgment, the district court found none of the information listed by Primmer constituted trade secret. The court also found that even if the information was a trade secret, Primmer's allegations did not raise a genuine issue of material fact whether Langer made unauthorized use of the secret.

Iowa Code section 550.2(4) defines trade secrets as:

> [I]nformation, including but not limited to a formula, pattern, compilation, program, device, method, technique, or process that is both of the following:
>> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by a person able to obtain economic value from its disclosure or use.
>> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Factors to consider in determining whether information constitutes a trade secret under Iowa law include (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. *Cemen Tech, Inc. v. Three D Indus., L.L.C.*, 753 N.W.2d 1, 7 (Iowa 2008). Nondisclosure and confidentiality agreements are relevant in determining whether information constitutes a trade secret, although they are not conclusive and "will not ordinarily estop a defendant from contesting the existence of a trade secret." *Id.* at 8.

The allegation made by Primmer concerns types of information that can be a trade secret. As our supreme court has stated:

> Trade secrets can range from customer information, to financial information, to information about manufacturing processes to the composition of products. There is virtually no category of information that cannot, as long as the information is protected from disclosure to the public, constitute a trade secret.
> We believe that a broad range of business data and facts which, if kept secret, provide the holder with an economic advantage over competitors or others, qualify as trade secrets.

*Economy Roofing & Insulating Co. v. Zumaris*, 538 N.W.2d 641, 647 (Iowa 1995). However, after considering the enumerated factors, we do not believe Primmer has shown that it took substantial effort or funds to obtain the information in question, or that it would be difficult for a third party to properly acquire such information. The district court concluded, "The information for which the Plaintiffs seek trade secrets protection is undisputedly available and/or known to PTI's competitors and the public." We agree. At the very least, the information is available through the customers who use brokerage firms to arrange truck transportation. Although we have little doubt that access to Primmer's information would make it quicker and easier to gain such information, we agree the information was readily ascertainable and did not constitute a trade secret. *See* Iowa Code § 550.2(4)(a). Without such a showing, Primmer has not met the burden of establishing the existence of trade secrets, and Langer is entitled to summary judgment on the issue of misappropriation of trade secrets.

**C. Conversion or Destruction of Property.**

Primmer maintains Langer converted or destroyed Primmer's property. "Conversion is the wrongful control or dominion over another's property contrary to that person's possessory right to the property." *Condon Auto Sales & Serv., Inc. v. Crick*, 604 N.W.2d 587, 593 (Iowa 1999). "The wrongful control must amount to a serious interference with the other person's right to control the property." *Id.*

In his deposition, Richard Primmer admitted that Primmer retained a copy of all information Langer took and never deprived use of the information. We

conclude the law of conversion does not apply to the information and summary judgment was proper. *See Kendall/Hunt Pub. Co. v. Rowe*, 424 N.W.2d 235, 247 (Iowa 1988) ("[The plaintiff] was never deprived of the use of its design and layout . . . by either [defendant]. No harm was done to their design and layout. Their control of the layout was never removed from them. It is true that [the defendants] made use of [the] design and layout but this usage was not incompatible with [the plaintiff's] own continuing usage. . . . In summary, we agree with the district court that the law of conversion does not apply to the design and layout of printed material."). Accordingly, this count was properly dismissed.

### D. Intentional Interference with an Existing Contract.

In its petition at law, Primmer maintained Lillibridge induced Langer to work for LTI, thus breaching the noncompetition agreement in an intentional interference with an existing contract. To recover for intentional interference with an existing contract, the plaintiff must show: (1) plaintiff had a contract with a third-party; (2) defendant knew of the contract; (3) defendant intentionally and improperly interfered with the contract; (4) the interference caused the third-party not to perform, or made performance more burdensome or expensive; and (5) damage to the plaintiff resulted. *Kern v. Palmer Coll. of Chiropractic*, 757 N.W.2d 651, 662 (Iowa 2008)

In their resistance to motion for summary judgment, Primmer argued for the first time that the defendants interfered with contractual relations by "imped[ing] Primmer from operating its brokerage division because they are not able to execute brokerage contracts with previous customers as a result of the

lost data." Here, the district court properly based its analysis on Primmer's right to recover on the cause of action pleaded. *Treanor v. B.P.E. Leasing, Inc.*, 158 N.W.2d 4, 7 ("The function of a pleading, of course, is to put the other party on notice of what the pleader intends to prove and define the issues.").

As the district court held:

> Even viewing the facts in the light most favorable to [Primmer], the Court concludes [Primmer's] claim that LTI and Mr. Lillibridge induced Mr. Langer to work for LIT, causing a breach in the non-competition agreement, fails. By Mr. Primmer's own testimony, Mr. Langer's employment did not preclude Mr. Langer from going to work for an employer such as LTI. Thus, no action of LTI and/or Mr. Lillibridge caused Mr. Langer not to perform his employment agreement with [Primmer]. Because [Primmer] cannot establish the elements necessary for an intentional interference with an existing contract claim, the Motion for Summary Judgment should be granted on this issue.

There is also no evidence that LTI or Lillibridge intentionally or improperly interfered with Langer's compliance of the non-compete clause contained in his employment agreement with Primmer. Summary judgment on this issue was proper.

### E. Acting in Concert.

In their petition at law, Primmer maintained the defendants acted in concert "to the conversion and destruction of trade secrets of Primmer." The district court held that because Primmer's underlying claim for conversion or destruction of property was properly disposed of with summary judgment, the claim for acting in concert could not survive, and the court granted the defendant's motion for summary judgment regarding the claim.

Under Iowa law, the test for liability of persons acting in concert is:

> For harm to a third person from the tortious conduct of another, one is subject to liability if he
>
> > (a) does a tortious act in concert with the other or pursuant to a common design with him, or
> >
> > (b) know that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
> >
> > (c) gives substantial assistance to the other is accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

*Tubbs v. United C. Bank, N.A., Des Moines*, 451 N.W.2d 177, 182 (Iowa 1990).

In addition to claim of conversion, this cause of action also re-alleges the allegations recited in reference to count I—violation of non-competition agreement and count II—misappropriation of trade secrets. To the extent that LTI or Lillibridge were acting in concert with Langer to cause damage to Primmer for conversion and misappropriation of trade secrets, we agree there is no genuine issue of material fact regarding the claim for the underlying tortious conduct, and thus summary judgment is proper.

In regard to any claim that LTI or Lillibridge were acting in concert with Langer in respect to the claim of a violation of the noncompete clause, we note that "acting in concert" is only applicable to tort claims, and thus, is not applicable to a cause of action for violation of a noncompete clause premised upon a breach of contract as alleged in the petition. "We can uphold the trial court's ruling on any ground apparent in the record, whether urged at trial or ruled on by the trial court." *State v. Howard*, 509 N.W.2d 764, 768 (Iowa 1993). This cause of action was properly summarily dismissed.

**F. Defamation.**

Primmer amended their original petition at law to include a claim for defamation of character. The original claim was against Langer, Lillibridge, and LTI. Lillibridge and LTI filed a second motion for summary judgment as it pertained to them, and the court found there was no genuine issue of material fact on the question whether LTI and Lillibridge directly, vicariously, or acting in concert, committed defamation of Primmer. Following the court's ruling, Primmer agreed to dismiss with prejudice its defamation claim against Langer, and that claim is not appealed.

Upon our review, we observe that Primmer failed to address in its brief either the district court's rationale or holding of the order granting summary dismissal of the defamation claim against LTI and Lillibridge. When a party fails to articulate an argument in its brief, we consider the argument waived. *See* Iowa R. App. P. 6.903(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."); *see also Asbury v. Iowa City Dev. Bd.*, 723 N.W.2d 188, 198 (Iowa 2006) ("[The party] failed to articulate this claim in its brief and failed to address any specific application of [the legal principles] to this case. Accordingly, [the party] has waived this argument and we do not address it further."). The motion for summary judgment on the defamation cause of action against Lillibridge and LTI is affirmed.

**G. Punitive Damages.**

Primmer contends it should be awarded punitive damages because the defendants' conduct from which their claims arose constituted willful and wanton disregard for Primmer's rights. Punitive damages are not permitted unless

actual and substantial compensatory damages are first shown. *McCarthy v. J.P. Cullen & Son Corp.*, 199 N.W.2d 362, 368 (Iowa 1972). The district court granted the defendants' motion for summary judgment on punitive damages after concluding that none of the underlying claims survived. Because we find Langer was not entitled to judgment as a matter of law upon Primmer's claim of breach of the noncompetition agreement, we must consider whether punitive damages may be awarded on the alleged breach of contract. Our supreme court has concluded that punitive damages may only be awarded for a breach of contract if the breach "constitutes an intentional tort, and is committed maliciously." *Magnusson Agency v. Pub. Entity Nat'l. Co.-Midwest*, 560 N.W.2d 20, 29 (Iowa 1997) ("Generally, a breach of contract, even if intentional, is insufficient to support a punitive damage award."). Because there is no evidence of an intentional tort that survives summary judgment, the claim for punitive damages must also fail. Summary judgment on the claim for punitive damages was proper.

### H. Trial Attorney Fees and Costs.

Following the district court's granting of summary judgment against Primmer's claim of misappropriation of trade secrets, the defendants filed a motion for attorney fees and costs pursuant to Iowa Code section 550.6.[5] The district court held that Primmer made the claim of misappropriation of trade

---

[5] This section states:

> The court may award actual and reasonable attorney fees to the prevailing party in an action under this chapter if any of the following is applicable:
>
> *1. A claim of misappropriation is made in bad faith.*
> 2. A motion to terminate an injunction is made or resisted in bad faith.
> 3. A person acts willfully and maliciously in the misappropriation.

(Emphasis added.)

secrets in bad faith and an award of attorney fees and costs to the defendants was appropriate and just.

We have little case law to provide guidance on what constitutes "bad faith" for the purposes of section 550.6.  Some courts have adopted a two-part test to determine whether a finding of bad faith is proper.  *See Sun Media Sys., Inc. v. KDSM, LLC*, 587 F. Supp. 2d 1059, 1073 (S.D. Iowa 2008).

> These courts reasoned that "bad faith" exists when the court finds (1) objective speciousness of the plaintiff's claim, and (2) plaintiff's subjective misconduct in bringing or maintaining a claim for misappropriation of trade secrets.  Objective speciousness exists where there is a complete lack of evidence supporting Plaintiff's claims.  Subjective misconduct is judged by the relative degree of speciousness of plaintiff's trade secrets claim and its conduct during litigation.

*Id.* (internal citations omitted).

Using this test, the district court awarded the defendants attorney fees and costs because of its objective findings "including the absence of a causal link between the Defendant's actions and [Primmer's] alleged harm and the absence of any evidentiary fact to indicate that any information identified by [Primmer] as confidential constituted a trade secret or that the Defendants used or disclosed any trade secret information" and its subjective findings that Primmer "made no effort to determine whether they had sustained any harm due to any action of the Defendants prior to launching and prosecuting this protracted litigation."

We agree the defendants were entitled to summary judgment on Primmer's claim regarding misappropriation of trade secrets; however, we do not believe Primmer's claim was brought in bad faith.  As we stated above, the

types of information Primmer's claim involved—business information concerning lanes of traffic, rates, and contact information of customer—are types of information which can constitute trade secrets. Moreover, the employee handbook informed Langer that the information was "confidential information." We also disagree with the district court's characterization that there was an "absence of any evidentiary fact . . . that the Defendants used or disclosed any" of the alleged information. Reggie Dunn's affidavit, submitted by Primmer, stated that Dunn saw Langer bring in printouts of information from Primmer Transportation, Inc. including rates, names, and phone numbers. According to Dunn, Langer was intentionally using the names of others when making the sales so they could not be traced back to him. The cause of action was summarily dismissed only because the information was concluded to be readily available although the information was certainly more easily available through Primmer's records. We do not view such an action as brought in bad faith.

Because Primmer's claim of misappropriation of trade secrets was not brought in bad faith, we reverse the district court's award of attorney fees and costs pursuant to section 550.6.

**I. Appellate Attorney Fees.**

On their cross appeal, the defendants ask that we award them appellate attorney fees pursuant to Iowa Code section 550.6. For the same reason we provided above, we decline to do so.

**IV. Conclusion.**

Because we find Primmer's claim regarding defamation of character has been waived and summary judgment was proper regarding Primmer's claims for

misappropriation of trade secrets, conversion or destruction of property, intentional interference with an existing contract, and acting in concert, we affirm the decision of the district court on those claims. Because we find there were genuine issues of material fact, Langer was not entitled to judgment as a matter of law upon Primmer's claim of breach of noncompetition agreement and we reverse and remand. Summary judgment was also proper on the claim for punitive damages. We also reverse the district court's award of costs and attorney fees to the defendants pursuant to Iowa Code section 550.6, and we decline to award the defendants appellate attorney fees.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**