**Mark J. HLUBEK, Appellant,**

v.

**Glen PELECKY and Thomas Wirtz, Appellees.**

No. 04–0255.

Supreme Court of Iowa.

July 22, 2005.

M. Leanne Tyler of M. Leanne Tyler & Associates, P.C., Davenport, for appellant.

Cameron A. Davidson and Troy A. Howell of Lane & Waterman LLP, Davenport, for appellees.

LARSON, Justice.

Mark J. Hlubek was employed as a drivers' education instructor for the Mississippi Bend Area Education Association (AEA) until his employer allegedly pressured him into resigning. Hlubek sued these defendants, administrators of AEA, on theories of intentional infliction of emotional distress, interference with a contract, and interference with potential business relationships. The district court granted summary judgment for the defendants on all claims, and the plaintiff appealed. We affirm.

## I. *Facts and Prior Proceedings.*

In January 1999 Nicole Preston, a sophomore at North Scott Community High School (North Scott) complained to school officials that Hlubek, her drivers' education teacher, had sexually harassed her. Even though Hlubek was employed by AEA and was not under the direct supervision of North Scott, North Scott administrators investigated the complaint to determine if there was any sexual abuse involved. *See* Iowa Admin. Code r. 281–102.9(2) (requiring school officials to investigate possible sexual abuse). They concluded there was none. North Scott forwarded a copy of its report to AEA and suggested that AEA officials conduct their own investigation.

The defendants, Glen Pelecky (AEA's chief administrator) and Thomas Wirtz (AEA's director of administrative services), investigated the complaint. Wirtz interviewed twelve students, including Nicole Preston. According to Wirtz, other incidents of potentially inappropriate conduct by Hlubek were brought to light in these interviews. Wirtz then met with

Hlubek to inform him of the students' allegations and to get his response. Hlubek denied the allegations and said that many of the statements were taken out of context. Wirtz drafted a written report and submitted it to Pelecky, who also personally interviewed Hlubek. Following the investigation, Pelecky began termination proceedings under Iowa Code chapter 279. Hlubek requested a hearing before the AEA board of directors. *See* Iowa Code § 279.15 (1999). However, before a hearing could be held, Hlubek resigned. He claims he did so only because Pelecky threatened to not only terminate him but to also seek revocation of his teaching certificate if he did not resign.

Shortly thereafter, Hlubek was charged by the state with criminal assault, based on Nicole Preston's allegations, but he was ultimately acquitted. After his acquittal he began substituting for the Clinton school district. He was initially offered a job as an art teacher, but after Clinton school officials conducted a background check, they rescinded the offer.

In March of 2000 Hlubek interviewed for a teaching position at the Maquoketa Community School District. During the interview, Hlubek disclosed his acquittal on the criminal assault charge. After the interview, the Maquoketa superintendent called defendant Pelecky to inquire about Hlubek's performance while employed at AEA. Pelecky did not go into specific details but did say that AEA was "dissatisfied" with Hlubek's performance and decided not to renew his contract. Shortly after that phone conversation, Hlubek received a letter from the Maquoketa school district informing him that, based on a background check and his criminal record, he would not be hired.

In March 2001 Hlubek sued Pelecky and Wirtz, raising several claims. He claimed the defendants acted unreasonably and with bad faith in investigating the allegations made by Nicole Preston. He claimed this amounted to intentional interference with his AEA contract. Second, he claimed that the defendants had interfered with his potential Maquoketa contract by knowingly making false statements to the Maquoketa superintendent. Third, Hlubek claimed that Pelecky and Wirtz interfered with potential business relationships—primarily the potential employment opportunities he had with Clinton and Maquoketa—by knowingly providing false information.

The district court dismissed all of Hlubek's claims on summary judgment. The court concluded that the defendants qualified for statutory immunity under Iowa Code sections 91B.2, 280.27, and 613.21 (2001). In the alternative, the court concluded that, even if the statutory immunity provisions did not apply, Hlubek failed to present enough evidence to create a genuine issue of material fact on any of his claims.

## II. *Disposition.*

A. *Standard of review.* We review summary judgments for correction of errors at law, and we will affirm them only when the entire record establishes no genuine issue of material fact. *Carr v. Bankers Trust Co.*, 546 N.W.2d 901, 903 (Iowa 1996). The moving party has the burden of showing the nonexistence of a material fact. *Fischer v. UNIPAC Serv. Corp.*, 519 N.W.2d 793, 796 (Iowa 1994). The evidence bearing on this question is viewed in the light most favorable to the nonmoving party. *Thorp Credit, Inc. v. Gott*, 387 N.W.2d 342, 343 (Iowa 1986). However, the nonmoving party may not rest upon the mere allegations of his pleading but must set forth specific facts showing the existence of a genuine issue for trial. Iowa R. Civ. P. 1.981(5); *Hoefer v. Wis.*

*Educ. Ass'n Ins. Trust,* 470 N.W.2d 336, 338–39 (Iowa 1991). Speculation is not sufficient to generate a genuine issue of fact. *Walls v. Jacob North Printing Co.,* 618 N.W.2d 282, 284 (Iowa 2000); *cf. Smith v. Shagnasty's, Inc.,* 688 N.W.2d 67, 71 (Iowa 2004).

B. *Statutory immunity.* Although the district court alternatively based its summary judgment on both statutory immunity and the plaintiff's failure to establish a prima facie case on his claims, we limit our discussion to the statutory-immunity issues. Three statutes are involved: Iowa Code sections 280.27 and 613.21 provide immunity for school employees in the performance of their duties, and Iowa Code section 91B.2 provides immunity for former or current employers who provide information to prospective employers.

1. *School employee immunity under Iowa Code sections 280.27 and 613.21.* Iowa Code section 280.27 provides:

> **Reporting violence—immunity.** An employee of a school district, an accredited nonpublic school, or an area education agency who participates in *good faith* and acts *reasonably* in the making of a report to, or investigation by, an appropriate person or agency regarding violence, threats of violence, or other inappropriate activity against a school employee or student in a school building, on school grounds, or at a school-sponsored function shall be immune from civil or criminal liability relating to such action, as well as for participating in any administrative or judicial proceeding resulting from or relating to the report or investigation.

(Emphasis added.)

Section 613.21 provides:

> **Immunity from civil suit.** An employee of an accredited public school district, accredited nonpublic school, or area education agency shall be immune from civil suit for *reasonable* acts undertaken in *good faith* relating to participation in the making of a report and any resulting investigation or administrative or judicial proceedings regarding violence, threats of violence, or other inappropriate activity against a school employee or student, pursuant to the provisions of section 280.27.

(Emphasis added.)

Absolute immunity ordinarily is available to certain government officials such as legislators, judges, and prosecutors acting in their official capacities, *Owen v. City of Independence,* 445 U.S. 622, 637, 100 S.Ct. 1398, 1408–09, 63 L.Ed.2d 673, 685 (1980), while qualified immunity applies to a wide range of other public officials. *Id.* The plaintiff notes, correctly, that sections 280.27 and 613.21 create only qualified—not absolute—immunity. Further, the statutes incorporate words such as "good faith" and "reasonable" that, according to him, do not readily lend themselves to disposition by summary judgment. The defendants respond that statutory immunity, like common-law immunity, provides more than protection from liability; it provides protection from even having to go to trial in some circumstances. *See Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411, 425 (1985) (qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation").

We have not previously considered the immunity provisions of sections 280.27 or 613.21; however, we have considered the common-law immunity of other public employees. In *Dickerson v. Mertz,* 547 N.W.2d 208 (Iowa 1996), the issue was whether a plaintiff's tort claim against two employees of the Iowa Department of Natural Resources could survive a motion for summary judgment based on qualified im-

munity. In that case, defendant Mertz had cited plaintiff for violating Iowa's hunting laws. The plaintiff was acquitted of that charge, but was later cited for another hunting violation by defendant Batterson, also a DNR employee. Dickerson was again acquitted. *Dickerson*, 547 N.W.2d at 210–11.

Dickerson sued officers Mertz and Batterson for abuse of process, malicious prosecution, and intentional infliction of emotional distress under state law. He also claimed denial of due process under 42 U.S.C. § 1983. The district court granted defendants' motion for summary judgment, and we affirmed. As to the plaintiff's § 1983 claim, we held the defendants were shielded by qualified immunity. *Id.* at 215. We said:

> If asserted by the government officer, the issue of qualified immunity is readily determinable prior to trial and the standard of proof is one of objective reasonableness . . . .

*Id.* We quoted a Supreme Court case regarding qualified immunity and the philosophy underlying it:

> "[T]he qualified immunity defense 'shield[s] [government agents] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known . . . .' *Harlow [v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982),] adopted this criterion of 'objective legal reasonableness,' rather than good faith, precisely in order to 'permit the defeat of insubstantial claims without resort to trial.' Unsurprisingly, then, we later found the immunity to be 'an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal [immunity] question.' "

*Id.* (quoting *Behrens v. Pelletier*, 516 U.S. 299, 305–06, 116 S.Ct. 834, 838–39, 133 L.Ed.2d 773, 783 (1996) (citations omitted)). We adopted the Supreme Court's test of "objective legal reasonableness" as the proper inquiry, "rather than good faith, precisely in order to 'permit the defeat of insubstantial claims without resort to trial.' " *Id.* (quoting *Behrens*, 516 U.S. at 306, 116 S.Ct. at 838, 133 L.Ed.2d at 783).

Despite our preference for the test of objective legal reasonableness instead of the "good faith" tests of earlier cases, both school immunity statutes in this case expressly condition immunity on good faith and reasonableness. *See* Iowa Code § 280.27 (granting immunity to school employees who "participate[ ] in good faith and act[ ] reasonably" in reporting suspected incidents of abuse); *id.* § 613.21 (granting immunity to school employees "for reasonable acts undertaken in good faith" when investigating alleged incidents of abuse).

■ The plaintiff argues that issues of material fact exist on the question of the reasonableness and good faith in the defendants' decision to investigate and their actual conducting of the investigation. We disagree. With regard to whether the decision to investigate Hlubek was made in good faith, all of the submitted evidence shows that it was. Pelecky and Wirtz claim that they made the decision because they were encouraged by North Scott school officials to do so. Although North Scott's investigation concluded that no sexual abuse had occurred for criminal law purposes, there was substantial evidence that some sort of sexual harassment had taken place. The only facts in the record reveal that there were clearly grounds to investigate, and Hlubek has presented no contrary evidence on this issue.

The plaintiff also contends that the defendants' manner of investigation was unreasonable and was not conducted in good faith. A large portion of his argument is dedicated to proving that "there were very little safeguards in the hearing process." He lists a number of faults in the defendants' investigatory procedure. For example, he claims that the defendants were biased because they were potential targets of a civil suit by Nicole Preston's parents, the investigation was unreasonable because students were not interviewed in Hlubek's presence, Hlubek was not given a chance to cross-examine students, Wirtz (the interviewer) did not have a child-psychology degree, he did not tape the interviews, and the students' statements were not made under oath. He concludes that a "finding[] of reasonableness and good faith require independence of the hearing officer making the decision and safeguards in the hearing process," and in this case, "hearing safeguards for Mark Hlubek were not present."

Under Iowa Code chapter 279, the first step in termination based on allegations of improper conduct is an investigation. If, at the end of this investigation, the superintendent believes that there is just cause to terminate the teacher's contract, he may recommend that the school's board of directors do so. Iowa Code § 279.15. The superintendent did that here.

The second step is triggered by the teacher. If a teacher feels that the recommendation is unsupported by the evidence, he may request a hearing before the board. *Id.* At this hearing, the superintendent presents evidence and calls witnesses before the board to prove, by a preponderance of the competent evidence, that just cause for termination exists. *Id.* § 279.16. The teacher may attend this hearing, may be represented by counsel, may produce his own evidence, and may cross-examine

witnesses called by the superintendent. *Id.*

■ Hlubek's complaints about the procedure apparently stem from his belief that chapter 279 hearing provisions were applicable. However, Wirtz and Pelecky were not conducting a hearing but were merely preparing for one. Hlubek waived a hearing by abandoning his rights under chapter 279.

Hlubek failed to "set forth specific facts showing that there is a genuine issue for trial" under rule 1.981(5). While a fact finder might speculate on this record that the defendants acted improperly, speculation is insufficient to generate a genuine issue of fact. *Walls,* 618 N.W.2d at 284.

The purpose of statutory immunity for school employees, we believe, is the same as it is for public officers:

> As recognized at common law, public officers require this protection to shield them from undue interference with their duties and from potentially disabling threats of liability.

*Harlow,* 457 U.S. at 806, 102 S.Ct. at 2732, 73 L.Ed.2d at 403. Without such protection, "there is the danger that fear of being sued will dampen the ardor of all but the most resolute, or the most irresponsible, public officials in the unflinching discharge of their duties." *Id.* at 814, 102 S.Ct. at 2736, 73 L.Ed.2d at 408 (internal quotations omitted).

One of the most important duties of school employees is the protection of their students. Recognition of statutory immunity will help assure a free flow of information to that end without fear of suits lacking in demonstrable merit. We believe the present case falls into that category. The district court properly granted summary judgment in favor of the defendants on the basis of immunity under Iowa Code sections 280.27 and 613.21.

2. *Immunity for former and current employers under Iowa Code section 91B.2.* Hlubek sued the defendants for interference with the Maquoketa contract and for interference with prospective business relationships because of the defendants' alleged false statements, through defendant Pelecky, to superintendents at other schools. The defendants claim immunity from these claims under Iowa Code section 91B.2. That section, entitled "Information provided by employers about current or former employees—immunity," states:

1. An employer or an employer's representative who, upon request by or authorization of a current or former employee or upon request made by a person who in good faith is believed to be a representative of a prospective employer of a current or former employee, provides work-related information about a current or former employee, is immune from civil liability unless the employer or the employer's representative acted unreasonably in providing the work-related information.

Iowa Code § 91B.2(1). Subsection (2) defines "unreasonably":

2. For purposes of this section, an employer acts unreasonably if any of the following are present:

a. The work-related information violates a civil right of the current or former employee.

b. The work-related information knowingly is provided to a person who has no legitimate and common interest in receiving the work-related information.

c. The work-related information is not relevant to the inquiry being made, is provided with malice, or is provided with no good faith belief that it is true.

*Id.* § 91B.2(2).

We have not previously interpreted this statute; however, its purpose and proper application are clear. The purpose is to provide "immunity from civil liability for an employer or employer's representative who acts reasonably in providing work-related information about a current or former employee of the employer." 1997 Iowa Acts ch. 179, at 514. This section applies as long as (1) the current or former employee authorized the release of the information, or the request for such information is made by a person who the employer, in good faith, believes is a representative of a prospective employer of the employee; and (2) the employer does not act unreasonably. Iowa Code § 91B.2(1). An employer only acts unreasonably if (a) the information released by the employer violates a civil right of the employee; (b) the employer knows that the person to whom he is giving the information has no legitimate right to it; or (c) the information is not relevant to the inquiry, is provided with malice, or is provided with no good-faith belief that it is true. *Id.* § 91B.2(2).

■ Hlubek does not challenge the application of this statute directly. Instead, he again contends that summary judgment was inappropriate because his evidence raised genuine disputes of material fact. Hlubek contends that Pelecky "conveyed negative information to [various] school districts about Mark Hlubek that [he] knew was untrue," and in doing so, acted unreasonably as that term is used in the statute. *See id.* § 91B.2(2)(c) (employer acts unreasonably if he provides information with no good-faith belief that it is true).

In Pelecky's deposition, he recounted his conversation with the Maquoketa superintendent:

A. Our conversation was brief, as I recall. I mentioned that Mark had worked for the AEA in the driver's ed

capacity, that we were intending not to renew his contract at the end of the year, and that Mark resigned. And that if he wanted specifics of day-to-day kinds of operations, he would need to talk with Mark's supervisor ... Don Willadsen.

. . . .

Q. You did not mention anything that there had been a complaint by a student ... of inappropriate? A. I do not recall exactly the conversation, but it was to the nature of that we were dissatisfied with his performance and dismissed him. I know I didn't go into the details.

Q. So you didn't say there had been inappropriate sexual comments with a student? A. No.

Q. Or inappropriate sexual behavior? A. No.

Q. At the time they made the inquiry, Maquoketa School District, were you aware that Nicole Preston had made complaints to the police department and that he had been charged criminally? A. I believe I knew that.

Q. Okay. Were you aware at the time that you made the—the inquiry was made by the Superintendent, Rob Montang, of Maquoketa High School, that Mark had been acquitted of any criminal charges brought against him with Nicole Preston as the claimed victim? A. I believe I was, that he had been acquitted, I believe.

Q. Did you know the basis of the acquittal? A. No.

. . . .

Q. Looking at Exhibit 7, you have probably never seen this before either, Dr. Pelecky. This is a letter after Mark had accepted the driver's ed position, and the background check was done on him from Steve—well, it is actually an attorney at Schoenthaler Law Firm indi-

cating that the Board was not—Board of Education of the Maquoketa Community School District had declined to hire him because of a background check.

It is your best recollection, however, that you just indicated on the telephone that you had found Mark's work—that you were dissatisfied with it? A. Correct.

Q. And you don't think you gave any details about the inappropriate contact by Nicole Preston? A. I know I didn't.

Q. Okay. And you don't know if you—you think you were aware of Mark's acquittal by the time you got the phone call from Maquoketa? A. I believe I was, correct.

Q. Did you get any calls from any other school districts? A. No.

Q. You don't recall any call that you might have gotten from Camanche High School? A. No.

Q. Okay. And the same answer as to Clinton? A. Correct.

Q. So the only school that you believe you personally might have—that you might have interfaced with was the Maquoketa Community School District? A. Correct.

The plaintiff provided no contrary evidence on this issue, other than the rejection letter he ultimately received from Maquoketa. The letter states that, after conducting a background check and reviewing Hlubek's criminal record, the school's board of education decided not to extend him an employment contract.

Hlubek maintains that the only reason Maquoketa would have conducted a background check is if Pelecky told them about the criminal charges pressed by Nicole Preston. This assumption, however, is merely conjecture and is completely unsupported in the record. There are other, more logical reasons explaining why Ma-

quoketa looked into Hlubek's criminal history. First, Hlubek himself told the Maquoketa superintendent about the charges and his acquittal. That certainly could have triggered the background check. Second, the letter from Maquoketa expressly stated that "[i]t is the policy of the Board of Education to have a background check, including a criminal record check, completed on all prospective teacher/instructor candidates prior to deciding whether to accept or reject a proposed employment contract." This is another reason why the board may have checked into Hlubek's history.

Hlubek has presented no evidence to show that Pelecky engaged in any conduct other than that described in his deposition or that he acted unreasonably, as that term is defined in section 91B.2(2). The statutory immunity of Iowa Code section 91B.2 applies, and the district court properly granted summary judgment to Pelecky on this issue as well as those previously discussed. Accordingly, we affirm.

**AFFIRMED.**