# IN THE COURT OF APPEALS OF IOWA

No. 20-0272
Filed February 17, 2021

**FORD MOTOR CREDIT COMPANY, LLC,**
Plaintiff-Appellee,

**vs.**

**CASSONDRA A. PETERSON,**
Defendant,

**and**

**DAVIN McLEOD,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Cerro Gordo County, Chris Foy, Judge.

Davin McLeod appeals the denial of his request for a stay and from a partial summary judgment ruling for Ford Motor Credit Company. **AFFIRMED.**

Travis M. Visser-Armbrust of TVA Law PLLC, Mason City, for appellant.

Kevin Abbott of Wetsch Abbott Osborn Van Vliet PLC, Des Moines, for appellee.

Considered by Doyle, P.J., and Tabor and Ahlers, JJ.

**TABOR, Judge.**

Davin McLeod appeals the grant of partial summary judgment to Ford Motor Credit Company, LLC in its suit to collect debt on a defaulted car loan. The district court refused to stay the proceedings against McLeod pending resolution of his girlfriend's bankruptcy case in federal court. Because his girlfriend's bankruptcy filing did not automatically stay proceedings against McLeod, we affirm the denial of his motion to stay. On the merits, Ford proved it was entitled to collect from McLeod. So we also affirm the summary judgment ordering McLeod to pay the loan balance.

## I. Facts and Prior Proceedings

McLeod lives with his girlfriend Cassondra Peterson and their daughter. According to McLeod, they also operate a business together. In March 2016, Peterson took out a loan to buy a Ford Fusion. Both she and McLeod signed an installment contract listing Peterson as the "Buyer" and McLeod as the "Co-Buyer." Peterson made a down payment of $2230.55 and financed $24,120. The contract required repayment of seventy-two installments of $355.

Trouble arose in September 2017 when Peterson had a car accident and stopped making payments.[1] Ford sent both Peterson and McLeod notices of default. When they did not pay, Ford sued for the loan's remaining balance of $19,907, with interest. Ford moved for summary judgment, including as evidence the contract signed by Peterson and McLeod, as well as the default notices.

---

[1] The vehicle was towed to a repair shop where it sat for over eighteen months. Peterson did not have insurance coverage to pay for repairs. Believing Peterson had abandoned the car, the repair shop sold it.

In October 2019, McLeod filed a notice informing the state court that Peterson had petitioned for Chapter 7 bankruptcy in federal court. He asked to stay the collection action. Represented by separate counsel, Peterson also filed notice of her bankruptcy case and requested a stay. The district court granted Peterson's stay request, citing 11 U.S.C. section 362(a).[2] But it denied McLeod's request. Following a hearing, the court granted Ford's motion for summary judgment in part. It ordered McLeod to pay the loan balance, plus interest. McLeod appeals the denial of his stay and the partial summary judgment.[3]

## II. Analysis

## A. Denial of Stay

Generally, we review the denial of a stay for an abuse of discretion. *Chicoine v. Wellmark, Inc.*, 894 N.W.2d 454, 459 (Iowa 2017). But the right to stay state proceedings pending a bankruptcy filing is "purely a creature of statute." *First Nat'l Bank of Glidden v. Matt Bauer Farms Corp.*, 408 N.W.2d 51, 53 (Iowa 1987) (explaining that 11 U.S.C. section 362 provides an automatic stay upon the debtor's filing of a bankruptcy petition under chapters 7, 9, 11, 12, and 13 of the

---

[2] Under that provision of the federal code, a bankruptcy filing

> operates as a stay, applicable to all entities, of . . . the commencement or continuation, . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy] case . . . or to recover a claim against the debt that arose before the commencement of the [bankruptcy] case.

11 U.S.C. § 362(a)(1). This automatic stay serves as "one of the fundamental debtor protections provided by the bankruptcy laws" by giving debtors "a breathing spell" from their creditors. *C.H. Robinson Co. v. Paris & Sons, Inc.*, 180 F. Supp. 2d 1002, 1016 (N.D. Iowa 2001) (citation omitted) (describing legislative history).

[3] Counsel for Ford received a default notice from the clerk of the appellate courts and did not file an appellee's brief.

federal code).  Thus, our review is for correction of errors at law.  *See Butzloff v. Quandt*, 397 N.W.2d 159, 161 (Iowa 1986) (rejecting abuse-of-discretion standard).

Brandishing the bankruptcy filing by his girlfriend, McLeod contends the district court erred in denying his request to stay Ford's action against him.  The court held that "the automatic stay arising from the Chapter 7 bankruptcy case of Defendant Peterson does not serve to stay further proceedings in this case against Defendant McLeod."

Reprising his argument from the district court, McLeod insists the stay extends to him as a third-party non-debtor.  He cites cases referring to the rights of non-debtors who maintain a significant relationship to the debtor in bankruptcy.  *See, e.g.*, *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999–1000 (4th Cir. 1986) (explaining stay applied only to debtors in bankruptcy *unless* "there is such identify between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor"); *Gen. Dynamics Corp., v. Veliotis*, 79 B.R. 846, 848 (E.D. Mo. 1987) ("The stay operates automatically in a non-bankruptcy lawsuit when a judgment against a non-debtor defendant is in effect a judgment against the debtor, and, therefore, a claim against the estate.").

Applying those cases to his circumstances, McLeod asserts their finances are so intertwined, that a judgment against him is a judgment against Peterson.  In his words, "the two exist as a single financial entity for ongoing expenses at work and at home."

The district court rejected that argument, finding

> none of the cases cited by Defendant McLeod approve of an extension of the automatic stay to a third party with no legal relationship to the debtor in bankruptcy. Defendants in this case are not married and have no legal relationship to each other. Given the lack of any federal precedent for doing so, the Court will not confer on Defendant McLeod the benefit of the automatic stay that now protects Defendant Peterson in her Chapter 7 case, particularly in the absence of any legal relationship between the two.

The court held: "The liability of Defendant McLeod under the installment contract on which [Ford] bases its claims in this action is independent of the liability of Defendant Peterson."

The contract language supports the court's reasoning. McLeod signed as the "Co-Buyer"—accepting the same terms as Peterson. The contract provides: "[T]he Buyer (and Co-Buyer, if any), may buy the vehicle described in this contract for cash or on credit. . . . By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract." Generally, "[c]opromisors are liable jointly if all of them have promised the entire performance of the contract. The effect of a joint obligation is that each joint promisor is liable for the whole performance jointly assumed." *Williston on Contracts* § 36:1 (4th ed. 1999) (footnote omitted); *see also In re Estate of Graham*, 690 N.W.2d 66, 72–73 (Iowa 2004) (discussing joint and several liability). As the "co-buyer" of the Ford Fusion, McLeod accepted liability for a contract breach, including a default on repayments.[4]

---

[4] The record includes a "Notice to Cosigner" holding the "cosigner or guarantor" responsible for the "full amount" of Peterson's debt. Although the electronic signature on the notice is illegible, by the context we assume McLeod was the cosigner.

But if we accept McLeod's claim to close financial ties with Peterson, should the automatic stay of the collection proceedings against her extend to those against McLeod? McLeod invokes the seminal case of *A.H. Robins* to bolster his argument that a judgment against him would essentially be a judgment against Peterson. We reject McLeod's position for two reasons.

First, McLeod's invocation of *A.H. Robins* does not advance his argument under subsection (a)(1) of 11 U.S.C. section 362.[5] That case reinforces the premise that an automatic stay is "available only to the debtor, not third party defendants or co-defendants." *A.H. Robins*, 788 F.2d at 999. True, the Fourth Circuit recognized that in "unusual circumstances" a court may stay proceedings against non-bankrupt codefendants of the bankrupt debtor.[6] *Id.*

---

[5] McLeod also asserts "the automatic stay applies to any act to enforce any lien against property of the estate or any act to enforce a lien against property of the debtor," citing 11 U.S.C. section 362(a)(2) and (3). And that "[t]he action to proceed against [McLeod] is an action to proceed against property of the debtor because of the close financial ties of the defendants." But section 362(a)(2) stays "the enforcement, against the debtor . . . , of a judgment obtained *before* the commencement of the [bankruptcy] case," and the judgment against McLeod was entered *after* Peterson filed for bankruptcy. (Emphasis added.) And section 362(a)(3) stays acts relating to a decedent's estate. *See* 11 U.S.C. § 362(a)(3) (operating to stay "any act to obtain possession of property *of the estate* or of property *from the estate* or to exercise control over property *of the estate*" (emphasis added)).

[6] The *A.H. Robins* case involved products-liability litigation against the manufacturer of an intrauterine contraceptive device, known as a Dalkon Shield, and certain corporate officers. 788 F.2d at 996. Robins, along with its insurer, had paid over $500 million to the plaintiffs following dozens of trials and thousands of settlements. *Id.* at 996 n.4. The "mounting tide of claims" led to Robins petitioning for bankruptcy. *Id.* at 996. That filing stayed all pending actions against Robins. *Id.* But many plaintiffs sought to sever their actions against Robins and to proceed with their claims against non-bankrupt officers in their individual capacities. *Id.* Robins sought to restrain those actions against the co-defendants. *Id.* at 997. The Fourth Circuit upheld enjoining those proceedings, finding a successful action against an officer for injuries sustained through use of the Dalkon Shield was the equivalent of an action against the corporation itself, as both actions sought

But we find nothing unusual about the agreement McLeod signed as a "co-buyer" that would permit him as a guarantor of Peterson's loan to receive the statutory protection of section 362. *See Credit All. Corp. v. Williams*, 851 F.2d 119, 121–22 (4th Cir. 1988) (finding purpose of guaranty would be frustrated by interpreting section 362 to stay creditor's action against non-bankrupt guarantor when the defaulting debtor petitioned for bankruptcy); *see also Lynch v. Johns-Manville Sales Corp.*, 710 F.2d 1194, 1196 (6th Cir. 1983) ("It is universally acknowledged that an automatic stay of proceeding accorded by [section] 362 may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the . . . debtor."). Unusual circumstances do not arise when a third-party codefendant has obligations "independent and primary, not derivative of those of the debtor." *C.H. Robinson Co.*, 180 F. Supp. 2d at 1017 (citations omitted).

Second, we question McLeod's standing to request a stay by claiming an adverse judgment against him would be "in effect" a judgment against Peterson. To establish standing, McLeod must show (1) *he has* a specific, personal, and legal interest in the outcome and (2) *he would be* injuriously affected. *See Birkhofer ex rel. Johannsen v. Birkhofer*, 610 N.W.2d 844, 847 (Iowa 2000). He fails to do so. Instead, McLeod focuses solely on the harm that would befall Peterson if Ford is able to bypass the bankruptcy stay and collect money from him.

---

compensation under Robins's products liability insurance policy. *Id.* at 999. The Fourth Circuit embraced the notion that the stay would not extend "where the third-party defendant was 'independently liable as, for example, where the debtor and another are joint tort feasors or where the nondebtor's liability rests upon his own breach of duty.'" *Id.* (quoting *In re Metal Center*, 31 B.R. 458, 462 (D. Conn. 1983).

"Without that money," he writes in his brief, "Peterson is not relieved of the financial pressures she sought to avoid by the filing of the bankruptcy petition; she is not given any breathing room; the collections, harassment and legal action are not stopped; and she has no greater ability to enter into repayment arrangements with creditors." McLeod lacks standing to assert "that argument on her behalf in an effort to ultimately gain a benefit for himself." *Cf. In re K.R.*, 737 N.W.2d 321, 323 (Iowa Ct. App. 2007) (discussing standing in context of termination of parental rights).

Recall that in *A.H. Robins* the Fourth Circuit approved *the debtor's request* to extend the stay to non-bankrupt corporate officers. "[T]he request should be filed by the debtor because it is the debtor's interests, not those of the nondebtor co-defendants, that are intended to be protected by an extension of the stay." *Lee v. RCN Corp.*, No. 03 C 5866, 2004 WL 2108577, at *1 (N.D. Ill. Sept. 20, 2004); *see also C.H. Robinson Co.*, 180 F. Supp. 2d at 1015 ("Based on Eighth Circuit caselaw, which is illustrative of a generalized reluctancy to expand the scope of the automatic stay provision of the Bankruptcy Code and to limit any expansion to truly extraordinary cases, it is this court's opinion that the Eighth Circuit Court of Appeals would agree with those courts that read *A.H. Robins Co.* to require that the debtor affirmatively move the bankruptcy court to extend the automatic stay to actions involving non-bankrupt codefendants.").[7]

---

[7] Not only was McLeod the wrong party to ask for the stay to be expanded, perhaps he was in the wrong court. "The weight of authority holds that a request to extend a [section] 362 stay is to be filed in the court where the bankruptcy action is pending . . . ." *Lee*, 2004 WL 2108577, at *1 (collecting cases); *see also Trustees for the Constance B. Talarski Residuary Tr. B v. Madina Realty, LLC*, No. CV136046246S, 2016 WL 1621588, at *2 (Conn. Super. Apr. 1, 2016)

For these reasons, the district court properly determined the stay of the proceedings against Peterson did not extend to McLeod, who was independently liable on the loan contract.

**B. Summary Judgment Order**

We review summary judgment rulings for correction of legal error. *MidWestOne Bank v. Heartland Co-op*, 941 N.W.2d 876, 882 (Iowa 2020). Summary judgment is proper when the record reveals no genuine issue of material fact, the conflict is limited to the legal consequences of those undisputed facts, "and the moving party is entitled to judgment as a matter of law." *Id.* (citation omitted). The moving party, here Ford, has the burden of showing the nonexistence of a material fact. *See Nelson v. Lindaman*, 867 N.W.2d 1, 6 (Iowa 2015) (quoting *Hlubek v. Pelecky*, 701 N.W.2d 93, 95 (Iowa 2005)). We view the evidence in the light most favorable to the nonmoving party, here McLeod, who is entitled to every legitimate inference that we may draw from the record. *Id.* at 6–7. "When the facts are undisputed, we reverse only if the district court misapplied the law." *Iowa Dep't of Human Servs. ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 149 (Iowa 2001).

McLeod's only defense to the summary judgment motion is the stay request. Reviewing the contract and the default notices and placing them in the light most favorable to McLeod, we agree with the district court that there are no genuine issues of material fact as to his liability for the car payments. As a matter of law,

---

("Nondebtors seeking protection of an automatic stay must move for the extension of the stay in the Bankruptcy Court.").

Ford is entitled to judgment for the outstanding loan amount.  Detecting no error, we affirm the order granting partial summary judgment.

**AFFIRMED.**