# IN THE COURT OF APPEALS OF IOWA

No. 22-1245
Filed April 26, 2023

**DAVID WALDERBACH and DONNA WALDERBACH,**
    Plaintiffs-Appellants,

**vs.**

**BARB ROMPOT and VIRGINIA FOREST,**
    Defendants-Appellees.

_____

Appeal from the Iowa District Court for Linn County, Ian K. Thornhill, Judge.

Plaintiff homeowners appeal from the grant of summary judgment to defendants, who were officers or board members of a homeowners' association. **AFFIRMED.**

Peter C. Riley of Tom Riley Law Firm, P.L.C., Cedar Rapids, for appellants.

Adam D. Zenor and Allyson F. Aden of Zenor Kuehner, P.L.C., Des Moines, and Joseph N. Van Vooren and John D. Simmons of Califf & Harper, P.C., Moline, Illinois, for appellees.

Considered by Bower, C.J., and Badding and Buller, JJ.

**BULLER, Judge.**

This appeal concerns a squabble among neighbors, made more dramatic by leadership of the local homeowners' association (HOA), now dressed up as a defamation and interference-with-contract suit. The district court granted summary judgment to the defendants on multiple bases, largely reasoning that the allegedly defamatory statements were true and that the plaintiffs conceded a lack of injury or damages. We affirm.

### I.      Background Facts and Proceedings

Plaintiffs David and Donna Walderbach moved into a condominium governed by an HOA in Marion. Strife began within months, with conflict erupting between the Walderbachs and Defendants Barb Rompot, Beth Fields, and Virginia Forest, each of whom served as officers or on the governing board for the HOA. Significant sources of conflict included the Walderbachs' Doberman Pinscher, Snickers; the Walderbachs' use of a hot tub in their garage; and David's use of binoculars to view into a neighbor's residence.

The crux of the issue with Snickers was allegedly poor pet-owner behavior. The defendants reported that they had personally witnessed, or others had reported to them, that Snickers was off-leash; that Snickers was walked on a too-long leash, contrary to city ordinance; and that Snickers had been left tethered outside. At least one of the defendants also made statements that at least arguably suggested some insurers believed Doberman Pinschers to be "vicious" dogs. During litigation, David admitted that Snickers had run off-leash, that the leash was longer than six feet, that Snickers was tethered outside on at least one occasion,

and that some insurers believed Snickers's breed (though not Snickers specifically) was vicious.

The garage hot tub became a topic of discussion in context of water usage at the condominium building. Around the time the Walderbachs moved into the building, there was an unexpected $50 water overage. At least one of the defendants, in their official capacities on behalf of the HOA and using letterhead, sent correspondence to the Walderbachs about whether the garage hot tub was the source of increased water usage. A plumber ultimately opined that the source of the water overage was "inconclusive," leading the HOA board to prorate the overage bill equally among all owners, for a grand total of $12.50 per unit. The correspondence explained that "no 'cause' was found" for the water overage and noted that David denied his hot tub was the source of the water loss.

In addition to the drama surrounding Snickers and the hot tub, a neighbor spotted David using binoculars to peer into another neighbor's residence. In deposition, David admitted to using the binoculars to look into a residence, and Donna admitted she was with David at the time.

According to the Walderbachs, the three defendants made statements regarding all of the above issues. David was subsequently elected as the new president of the HOA's board and then filed a lawsuit against the defendants alleging defamation, interference with contract, and trespass. The trespass claim was voluntarily dismissed, as were claims against Defendant Fields. After depositions and motion practice, summary judgment was granted to the remaining defendants. The Walderbachs appeal.

## II.      Preservation of Error

Error preservation is disputed as to the defamation claims. We conclude error was preserved as to allegedly defamatory statements concerning Snickers, the hot tub, and David being a "peeping Tom." We find error was not preserved as to additional claims sprinkled in the facts section of the Walderbachs' appellate brief, including statements that David was "above the law," that he made "outlandish accusations," and that the HOA experienced late payments. These claims were not sufficiently developed below, were not litigated, and were not ruled upon. They cannot be the basis for relief now, and we limit our review accordingly. *See State v. Rutledge*, 600 N.W.2d 324, 325 (Iowa 1999) ("Nothing is more basic in the law of appeal and error than the axiom that a party cannot sing a song to us that was not first sung in trial court.").

## III.     Standard of Review

Summary judgment is appropriate when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). Evidence "is viewed in the light most favorable to the nonmoving party," but "the nonmoving party may not rest upon the mere allegations of his pleading [and] must set forth specific facts showing the existence of a genuine issue for trial." *Hlubek v. Pelecky*, 701 N.W.2d 93, 95 (Iowa 2005). "Speculation is not sufficient to generate a genuine issue of fact." *Id.* at 96.

## IV.     Discussion

The two buckets of claims before us concern alleged defamation and alleged interference with a contract. We affirm the grant of summary judgment as to both.

### A. Alleged Defamation

Under Iowa law, a defamation claim has six elements:

(1) publication,
(2) of a defamatory statement,
(3) which was false and
(4) malicious,
(5) made of and concerning the plaintiff,
(6) which caused injury.

*Bierman v. Weier*, 826 N.W.2d 436, 443 (Iowa 2013). Truth "is an absolute defense." *Huegerich v. IBP, Inc.*, 547 N.W.2d 216, 221 (Iowa 1996). The substantial truth of a statement entitles a defendant to summary judgment:

> If the underlying facts as to the gist or sting of the defamatory charge are undisputed, the court may determine substantial truth as a matter of law. In that event, the test, for summary judgment purposes, is whether the plaintiff would have been exposed to any more opprobrium had the publication been free of error.

*Behr v. Meredith Corp.*, 414 N.W.2d 339, 342 (Iowa 1987) (internal citaiton omitted).

As a threshold matter, throughout this litigation the Walderbachs failed to allege specific statements that they claim were defamatory. While we could perhaps end the analysis here and summarily affirm, we review three broad categories of statements identified by the district court below and addressed by the defendants in their brief on appeal:

- Statements regarding Snickers;

- Correspondence regarding the water overage and its potential connection to the garage hot tub; and

- Statements regarding David being a "peeping Tom."

For these categories of statements, we find no genuine dispute that these statements were substantially true, and the defendants were entitled to summary judgment.

First, as to Snickers, there is a lurking issue about whether the statements at issue are "of and concerning the plaintiff," as these statements are really about Snickers rather than the Walderbachs, and Snickers is not a party to this lawsuit. We bypass this concern, in part due to on our commonsense understanding that complaints about a "bad dog" are commonly understood as complaints about "bad owners," and at least arguably concern the plaintiffs. But even if this is so, the Walderbachs conceded the substantial truth of the defendants' statements. David admitted in sworn testimony that some insurance companies view the Doberman Pinscher as "a vicious dog breed," that Snickers ran "at large" without a leash, that Snickers was on a leash in excess of six feet contrary to Marion City Code, and that Snickers had been tethered to a tree. With truth as an "absolute defense," the district court correctly determined these claims do not survive summary judgment. *See Huegerich*, 547 N.W.2d at 221; *Behr*, 414 N.W.2d at 342.

Second, regarding the water dispute, we bypass a concern related to whether the statements at issue were published to third parties and focus on the truth of the statements. The letters detail the defendants' suspicion that the garage hot tub was the source of the water overage, but they note that "no cause" was found and that David denied responsibility. David admitted in sworn testimony that these statements were accurate. Truth, as an absolute defense, also bars this claim as a matter of law. *See Huegerich*, 547 N.W.2d at 221; *Behr*, 414 N.W.2d at 342.

Third, regarding statements that he was a "peeping Tom," David admitted to using binoculars to spy on at least one of his neighbors. We are somewhat hamstrung in assessing this argument due to the Walderbachs' appellate briefing, as they do not make any clear argument specific to this statement. Their argument below was that a "peeping Tom" necessarily violates an Iowa criminal statute, such as the crime of trespass codified at Iowa Code section 716.7 (2020). The district court impliedly rejected this contention, and we do so explicitly. We find David's admission to using binoculars to spy on a neighbor approximates the common and historical understandings of what it means to be a "peeping Tom," even without an admission to prurient purposes. *See Peeping Tom*, Black's Law Dictionary (11th ed. 2019) ("Someone who spies on another (as through a window), usu. for sexual pleasure; VOYEUR.—Also termed *peeper*."); Lisa F. Wu, *Peeping Tom Crimes*, 28 Pac. L.J. 705, 705 n.1 (1997) (tracing the historical origin of "peeping Tom" to 1040 England, when Lady Godiva rode naked through the streets, the townspeople were ordered to draw their curtains and not look at her, and Tom the tailor defied the order and was struck blind). Because truth is an absolute defense to defamation, and David admits the substantial truth of the statement, summary judgment was correctly granted. *See Behr*, 414 N.W.2d at 342.

Last, for at least the first two claims (about Snickers and the water), we note the Walderbachs appear to have conceded the lack of damages and reputational harm. As our supreme court once said, "Hurt feelings alone cannot serve as the basis of a defamation action." *Johnson v. Nickerson*, 542 N.W.2d 506, 513 (Iowa 1996). We agree with the district court that the failure to allege facts supporting damages and reputational harm is independently fatal to the Walderbachs' first two

defamation claims, and we affirm on this additional basis. The defendants were correctly granted summary judgment.

## B. Alleged Interference with Contract

The tort of intentional interference with an existing contract has five elements:

> (1) plaintiff had a contract with a third-party;
> (2) defendant knew of the contract;
> (3) defendant intentionally and improperly interfered with the contract;
> (4) the interference caused the third-party not to perform, or made performance more burdensome or expensive; and
> (5) damage to the plaintiff resulted.

*Green v. Racing Ass'n of Cent. Iowa*, 713 N.W.2d 234, 243 (Iowa 2006) (quoting *Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 399 (Iowa 2001)).

The Walderbachs failed to generate a fact question on virtually all of these elements. We agree with the district court that there is no factual dispute the defendants' conduct at issue was undertaken in their role as officers or board members of the HOA. As a result, no third-party contract existed for the defendants to have allegedly interfered with. We also agree with the district court that, while David may assert that the HOA bylaws did not allow him to do as he pleases, these restrictions all existed before he moved into the condominium governed by the HOA, and they are not the product of any tortious act. In other words, the defendants correctly and in good faith enforced the covenants and other restrictions, which by definition is not "improper" interference. Last, we agree with the district court that the Walderbachs have not alleged injury or damages; the Walderbachs were not required to give up Snickers or the garage hot tub, and the

water overage was paid evenly between all residents of the building. Summary judgment was correctly granted.

**AFFIRMED.**